[No. 2928-1.    Division One.    March 24, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. JACK ZEKTZER, *Appellant*.

*Jack Zektzer*, pro se.

*Christopher T. Bayley, Prosecuting Attorney*, and *Michael C. Duggan* and *David B. Kenyon, Deputies*, for respondent.

JAMES, J.—This is a pro se appeal on a short record. In two district court trials, defendant Jack Zektzer was convicted of operating a motorcycle without wearing a helmet or possessing a valid operator's license. On appeal to superior court, the charges were consolidated for trial and Zektzer was again found guilty on all counts.

On appeal to us, Zektzer's principal contention is that RCW 46.37.530(1)(c), which mandates the wearing of a helmet, "is devoid of public purpose and therefore violates the due process guarantee of the fourteenth and ninth amendments of the U.S. Constitution." Zektzer acknowledges that in *State v. Laitinen*, 77 Wn.2d 130, 134, 459 P.2d 789 (1969), our Supreme Court ruled that "requiring motorcycle riders to wear protective helmets of a type approved by the state commission on equipment when riding upon the public highways is a legitimate and reasonable exercise of the police power, and RCW 46.37.530(3)[1] is a constitutional declaration thereof." Zektzer argues, however, that we should not be bound by *Laitinen*'s holding. He asserts that no statement of facts or transcript was provided the Supreme Court in *Laitinen*. Zektzer argues that because "none of the facts being presented . . . in this case regarding the existence of a public purpose" were

---

[1] RCW 46.37.530(3) is now RCW 46.37.530(1)(c).

before the Supreme Court in *Laitinen*, the holding of *Laitinen* should not be considered dispositive of the constitutional question.

■ Zektzer has submitted a reasoned argument that there is no reliable evidence to establish that the wearing of helmets by motorcycle riders has any real, substantial, or rational connection with the public peace, health, safety, morals, or general welfare. But as pointed out in *Laitinen* on page 133, "if a state of facts can reasonably be conceived that will sustain a classification under the police power, there is a presumption that such facts exist." The court in *Laitinen* further pointed out on page 133 that:

> It is not the court's function to decide whether the statute is sound or unsound, wise or unwise, effectual or ineffectual—but only whether it is within the legislature's constitutional powers to enact it. This comports with the general democratic principle that powers of self-government have been largely reserved by the people to be exercised through their legislatures and not their courts.

We are bound by our Supreme Court's ruling that:

> requiring motorcycle riders to wear protective helmets of a type approved by the state commission on equipment when riding upon the public highways is a legitimate and reasonable exercise of the police power, and RCW 46.37.530 (3) is a constitutional declaration thereof.

*State v. Laitinen, supra* at 134.

A substantial portion of Zektzer's brief is devoted to his claim that the trial court erred in denying his motion for an order compelling the Secretary of the Department of Social and Health Services, the Chief of the Washington State Patrol, the Director of the Department of Motor Vehicles, the Secretary of the Commission on Equipment, the Director of the Department of Labor and Industries and the Governor of the State of Washington to respond to interrogatories. The agreed statement of facts includes the following:

> That said motion of the defendant for the service of interrogatories upon the above state officers was denied

by the court, on the grounds that the interrogatories were oppressively broad in scope, that the responsible officials had already responded to defendant's questions, and that defendant had made no showing of need to obtain such information for the preparation of his case.

Agreed finding of fact No. 8.

██ Our review of the interrogatories persuades us that they were oppressively broad in scope. The record also reveals that the officials in question fairly responded to letters from Zektzer propounding substantially similar questions. CrR 4.7(h)(4) provides that in the "regulation of discovery," the trial judge may, upon "a showing of cause," order that discovery "be restricted or deferred, or make such other order as is appropriate, . . ." Necessarily, protective orders concerning discovery reflect an exercise of judicial discretion. The trial judge did not abuse his discretion in denying Zektzer's motion to compel answers to his interrogatories.

Zektzer further contends that even if RCW 46.37.530(1)(c) is constitutional, the statute cannot be enforced because "no helmets of a type approved by the Commission on Equipment exist." Zektzer refers to WAC 204-20-130, which provides for "a test report from a nationally recognized testing laboratory certifying that the [helmet] meets the specifications set forth in . . . [WAC 204-20-010 through 204-20-150]." Zektzer asserts that the Commission on Equipment "admitted" that it had never received "a test report from a nationally recognized testing laboratory" certifying that the helmets approved for use in Washington met the specifications set forth in WAC 204-20.

Zektzer's argument fails to recognize that WAC 204-08-100, PROCEDURE FOR OBTAINING APPROVAL OF AUTOMOTIVE EQUIPMENT WITHIN THE SCOPE OF RCW 46.36.010,[2] provides alternative methods for the approval of automotive equipment. A "device" may either meet "the current specifications for that device as outlined by the Society of Automotive Engineers in the Society of Automotive Engineers

[2]RCW 46.36.010 is now RCW 46.37.005.

Handbook or as outlined by the American Standards Association" or meet "standards set by the commission on equipment in a published commission on equipment regulation." The agreed statement of facts includes the following:

That the State Commission on Equipment has an agreement with the American Association of Motor Vehicle Administrators which provides that the AAMVA will test all automotive safety equipment in a nationally recognized testing laboratory;

Agreed finding of fact No. 18,

That when a particular helmet meets the approval standards of the AAMVA, a certificate of approval is forwarded to the State of Washington, where it is then approved by the Commission on Equipment for use within the State of Washington;

Agreed finding of fact No. 19,

That the inspection division of the AAMVA was established on a national level to preclude each individual state from having to establish and operate a sophisticated testing laboratory;

Agreed finding of fact No. 20,

That the State Commission on Equipment presently maintains a list of helmets approved by the AAMVA and the Commission.

Agreed finding of fact No. 21.

■ The agreement between the commission and the AAMVA provides that the AAMVA will either conduct its own tests or contract with "approved testing laboratories" for such tests. The agreement further requires that the AAMVA certify that the device tested meets the "prescribed standards and/or specifications" of the "Society of Automotive Engineers, American Standards Association, or other recognized authority." The evidence considered by the trial court includes the unchallenged statement by the commission's chairman that the inspection division of the AAMVA was established to test automotive equipment in a "nationally recognized" laboratory.

RCW 46.37.005 imposes upon the commission the duty to

adopt "reasonable" rules and regulations relating to motor vehicle equipment. We find that the procedures followed by the commission with reference to motorcycle helmets are in substantial compliance with WAC 204-08-100 and that the commission has fulfilled its statutory duty to enforce reasonable rules "with regard to vehicle equipment, as may be deemed necessary for the public welfare and safety . . ." RCW 46.37.005.

Finally, Zektzer contends that the Department of Motor Vehicles has not adopted any rules pursuant to RCW 34.04.020 for the issuance of drivers' licenses or motorcycle endorsements thereon and that, in the absent of rules, no drivers' licenses, with or without motorcycle endorsements, can legally be issued. He argues that the issuance of drivers' licenses in the "absence of public rules and procedures" is a violation of constitutional due process.

RCW 34.04 is the Washington administrative procedure act. RCW 34.04.020 requires that

> In addition to other rule-making requirements imposed by law:
> (1) Each agency shall adopt rules governing the formal and informal procedures prescribed or authorized by this chapter and rules of practice before the agency, . . .

For those agencies which did not adopt procedural rules prior to July 1, 1967, WAC 1-08, UNIFORM PROCEDURE RULES, "govern the administrative practice." RCW 34.04.022.

RCW 46.20 concerns motor vehicle drivers' licenses. Our review of RCW 46.20 reveals that the *only* "rule-making requirements imposed by law" (RCW 34.04.020) upon the Director of the Department of Motor Vehicles are those contained in RCW 46.20.450. By RCW 46.20.450, the legislature has required that the Director of the Department of Motor Vehicles shall, pursuant to RCW 34.04, "adopt rules and regulations and standards and specifications pertaining to" the licensing of drivers of vehicles requiring "special skills." The vehicles which require drivers with special skills are designated in RCW 46.20.440. They are motor-

trucks, truck-tractors, school buses, private carrier buses, auto stages, and for-hire vehicles. Motorcycles are not so designated.

Among the matters required to be covered by rules is "[t]he establishment of the *type* of examinations to be given" (Italics ours.) (RCW 46.20.450(3)) drivers of such specified vehicles. But there is no requirement that the director adopt administrative rules concerning the *content* of the examinations to be given such drivers.

■ The duties of the Director of the Department of Motor Vehicles with reference to basic drivers' licensing examinations are contained in RCW 46.20.130. Motorcycle licenses are also covered. It is required that the director "shall *prescribe* the *content* of the driver licensing examination and the manner of conducting the examination . . . (Italics ours.). RCW 46.20.130 further provides that the examination shall include a test of the applicant's eyesight, his ability to understand highway signs, his knowledge of traffic laws and an actual demonstration of his ability to operate a motor vehicle. The statute also provides that, in addition to the basic tests, an applicant for license to drive a motorcycle must demonstrate his ability to safely operate a motorcycle.

Zektzer points out that WAC 308-104-010 establishes the standards for a vision test, but that the administrative code contains no other provisions relating to driver licensing. He argues that this demonstrates that the Director of the Department of Motor Vehicles has not complied with the requirements of Washington's administrative procedure act, RCW 34.04.

Although RCW 46.20.130 does require that the director "prescribe" the *content* of basic driver licensing examinations, it does not, as does RCW 46.20.450, require that the *type* of examination be established by rule. By the enactment of RCW 46.20, the legislature has itself established comprehensive and detailed rules and regulations for licensing motor vehicle drivers. By RCW 46.20.130, the legisla-

ture has itself determined the type of examinations to be given for basic drivers' licenses. It has also established minimum standards for the content of such examinations. No rulemaking duty is imposed by RCW 46.20.130.

The fact that the department has chosen to prescribe the standards for a vision test by way of an administrative rule is not significant. Visual acuity is tested mechanically, and it is appropriate that the standards for the drivers' vision test be formally adopted. But the content of an examination concerning ability to understand highway signs and knowledge of traffic laws is not an appropriate subject for administrative rules. If examination questions could be known in advance, the examination would not be a true test of an applicant's competence.

We conclude, therefore, to follow the *Laitinen* holding that RCW 46.37.530 (1) (c) is constitutional. Furthermore, the Department of Motor Vehicles' helmet approval procedure is in accord with RCW 46.37.005 and WAC 204-08-100. Finally, we find that RCW 46.20.130 does not require that the Department of Motor Vehicles establish the type and content of basic drivers' license examinations by administrative rule. The legislature has itself determined the type and content of the examinations and listed the criteria in RCW 46.20.130.

The judgment of conviction is affirmed.

FARRIS and SWANSON, JJ., concur.

Petition for rehearing denied April 24, 1975.

Review denied by Supreme Court July 29, 1975.