[No. 59354-0. En Banc. September 9, 1993.]

THE STATE OF WASHINGTON, *Petitioner*, v. DONALD NORBY, ET AL, *Respondents*.

*Donald C. Brockett, Prosecuting Attorney,* and *Kevin M. Korsmo, Deputy,* for petitioner.

*Charles S. Dorn* and *Brian O'Brien, P.S.,* by *Charles S. Dorn; Pat Stiley & Assocs., P.S.,* by *Patrick K. Stiley,* for respondents.

JOHNSON, J. — The State charged the defendants in this appeal with various felony drug or theft charges arising from separate incidents. These charges were filed anywhere from 6 to 33 months after the defendants allegedly committed the crimes in question. The defendants each raised motions to dismiss, arguing their due process rights were violated by this preaccusatorial delay. The trial court consolidated these cases for the purposes of the motion, and granted the defendants' motion to compel the State to answer detailed interrogatories about police and prosecutorial investigative and charging practices, as well as interrogatories about the number of individual cases involved in the delay. The court also allowed individuals who are not yet charged with crimes to participate in the defendants' motion to dismiss. The State appeals these rulings. We reverse each of these rulings and remand for a determination of whether any of the individual defendants suffered actual prejudice from the charging delay.

I

The Spokane County prosecutor lost three attorney positions in 1987 because of a county budget shortfall. As a result, the prosecutor reorganized the office and placed priority on cases involving homicide and other major crimes. Felony drug, fraud, and misdemeanor traffic cases were designated as lower priority cases. Only one deputy prosecutor was available to prosecute the county's drug cases during this period.

An additional deputy prosecutor was added to the office in January 1988, and 20 percent of his caseload involved county drug cases. The county's backlog of unfiled drug cases reached 250 by September 1988, and 350 by December 1988. In January 1989, the prosecutor received additional funding, and the drug unit was increased to three full-time deputy prosecutors.

In April 1990, the Spokane County prosecutor charged defendant Norby with two counts of violating the Uniform Controlled Substances Act. Norby's alleged offenses occurred in late March 1988. Norby filed a motion to dismiss because of the 24-month delay in filing charges. The Spokane County prosecutor filed charges against the other defendants in this case in either 1990 or early 1991, and these defendants also filed motions to dismiss because of similar charging delays.

The defendants then filed motions to consolidate their cases with Norby's for the purpose of their motions to dismiss. Some unnamed individuals, who had not yet been charged with any crime, also filed motions to "join" in the motions to consolidate and dismiss.

The defendants served interrogatories on the State in which they sought to discover detailed information about the State's investigations and charging policies and the number of cases involved in the prosecutor's backlog.[1] The State did not answer these interrogatories. The defendants raised a motion to compel the State to answer.

On March 1, 1991, the trial court heard argument on both the motion to compel discovery and the defendants' motions

---

[1]The defendants sought through their interrogatories information on the prosecutor's filing policies; the county sheriff's and county police department's policies for referring investigations to the prosecutor; the number of felony investigations awaiting charging decisions; the number of cases in which probable cause for arrest had developed but had not yet been referred to the prosecutor for charging decisions; the number of cases in which probable cause for arrest had developed and the suspect had not yet been arrested; the number of felony suspects who had been arrested but had not yet been charged; the number of suspects who were required to post bond but who had not yet been formally charged or arrested; the number of suspects who had property seized but had not yet been formally charged; and the number of cases where the last investigative act exceeded 6 months, 1 year, 2 years, and 3 years.

to consolidate their cases. The court determined the defendants' cases "share common questions of fact and law" regarding the "extent and nature of [the State's] pre-accusatorial delay", and these common issues must be resolved before looking to the facts of each individual case. Findings of fact 20, 23; Clerk's Papers, at 360-61. The court thus granted the motion to consolidate. It also ruled the uncharged and unnamed individuals could "join" in the defendants' motion to dismiss.

The trial court also granted the defendants' motion to compel the State to answer the interrogatories. In its oral ruling, the court noted that no provision of the criminal rules expressly provides for interrogatories, but Superior Court Civil Rule 33 provided authority for compelling the discovery in this case. The court did not enter a finding that the information the defendants sought was material or that their discovery request was reasonable.

The State raised a motion for reconsideration. In support of this motion, the State filed affidavits from the sheriff and the police department. According to these affidavits, sheriff and police staff would have to review thousands of cases requiring over 17,000 hours of work in order to prepare the information sought by the defendants. The trial court denied the motion for reconsideration. The State appealed the trial court rulings, and this court accepted direct review.

This appeal raises three issues. First, did the trial court err in consolidating the defendants' cases without first determining whether any of the defendants suffered actual prejudice as a result of the charging delay? Second, did the trial court err in compelling the State to answer the interrogatories? Third, did the trial court err in allowing uncharged individuals to "join" in the defendants' motion to dismiss?

## II

■ A preaccusatorial delay may violate a defendant's right to due process under the United States Constitution.[2] *United*

---

[2]The defendants do not argue that the state constitution provides greater protection in this case. They thus have not presented briefing pursuant to the

*States v. Lovasco*, 431 U.S. 783, 52 L. Ed. 2d 752, 97 S. Ct. 2044 (1977). The Court in *Lovasco* cautioned, however, that the due process clause:

> does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. Judges are not free, in defining "due process," to impose on law enforcement officials our "personal and private notions" of fairness and to "disregard the limits that bind judges in their judicial function."

*Lovasco*, 431 U.S. at 790 (quoting *Rochin v. California*, 342 U.S. 165, 170, 96 L. Ed. 183, 72 S. Ct. 205, 25 A.L.R.2d 1396 (1952)); *see also State v. Dixon*, 114 Wn.2d 857, 863, 792 P.2d 137 (1990). Prosecutors thus have broad discretion in their charging determinations. As this court has recognized:

> Allowing prosecutors broad discretion to delay the filing of charges until they are "completely satisfied that [they] should prosecute and will be able promptly to establish guilt beyond a reasonable doubt", *Lovasco*, at 795, serves important societal interests. Forcing prosecutors to proceed precipitously may waste scarce resources on cases in which the defendant's guilt cannot be established beyond a reasonable doubt. More devastating, however, is the risk that incomplete police investigation will result in charges being brought against innocent persons. These are costs that society should not bear. *Lovasco*, at 793-94.

*State v. Lidge*, 111 Wn.2d 845, 850, 765 P.2d 1292 (1989).

■ The court applies the following 3-part test from *Lovasco* for determining when a preaccusatorial delay violates an individual's right to due process:

> (1) The defendant must show he [or she] was prejudiced by the delay; (2) the court must consider the reasons for the delay; and (3) if the State is able to justify the delay, the court must undertake a further balancing of the State's interest and the prejudice to the accused.

*Lidge*, 111 Wn.2d at 848 (quoting *State v. Alvin*, 109 Wn.2d 602, 604, 746 P.2d 807 (1987)). With these principles in mind, we now turn to the issues in this case.

---

factors listed in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986) in support of any such claim. The court will not reach a state constitutional issue without such briefing. *See World Wide Video, Inc. v. Tukwila*, 117 Wn.2d 382, 390, 816 P.2d 18 (1991), *cert. denied*, 112 S. Ct. 1672 (1992).

The State argues the trial court erred in consolidating the defendants' cases because the defendants have not yet met the first part of the test requiring that they show prejudice. The defendants argue the 3-part test does not require an inflexible order of proof, and a trial court may inquire into the State's reasons for the delay without first determining whether any of the defendants suffered any prejudice.

The 3-part test clearly indicates a defendant cannot prevail on a claim of preaccusatorial delay *unless* he or she demonstrates actual prejudice resulting from this delay. If a defendant demonstrates this actual prejudice, the court will *then* consider the State's reason for the delay and balance the State's interests against this prejudice. *See United States v. Gonzalez-Sandoval*, 894 F.2d 1043, 1050-51 (9th Cir. 1990) (where the court did not consider the government's reasons for the preaccusatorial delay because the defendant had failed to show actual prejudice).

The defendants assert that even if they must meet an initial burden of showing actual prejudice, the court can infer prejudice from the prefiling delay alone. We reject this argument. The mere *possibility* of prejudice is not sufficient to meet the burden of showing actual prejudice. *State v. Ansell*, 36 Wn. App. 492, 498-99, 675 P.2d 614, *review denied*, 101 Wn.2d 1006 (1984). A mere allegation that witnesses are unavailable or that memories have dimmed is insufficient; the defendant " 'must specifically demonstrate the delay caused actual prejudice to his defense.' " *State v. Gee*, 52 Wn. App. 357, 367, 760 P.2d 361 (1988) (quoting *State v. Bernson*, 40 Wn. App. 729, 734, 700 P.2d 758, *review denied*, 104 Wn.2d 1016 (1985)), *review denied*, 111 Wn.2d 1031 (1989). A court will presume prejudice if the juvenile court loses jurisdiction over a defendant as a result of a preaccusatorial delay. *Dixon*, 114 Wn.2d at 860-61. None of the defendants in this case, however, alleges the loss of juvenile court jurisdiction.

A trial court's ruling consolidating cases is reviewed under the abuse of discretion standard. *See State v. Orange*,

78 Wn.2d 571, 573, 478 P.2d 220 (1970) (concerning the trial court's power to consolidate cases for trial). The trial court in this case determined that common issues of law and fact regarding the State's delay necessitated consolidation. However, only defendants who *can* show actual prejudice could conceivably have any questions of law and fact in common regarding the State's delay. The record indicates the defendants have not yet had the opportunity to present specific evidence of prejudice resulting from the State's delay. Because it is uncertain whether any defendants suffered actual prejudice, the trial court erred in finding common issues among these cases at this stage in the proceedings, and it thus erred in consolidating these cases.

The next issue is whether the trial court erred in granting the defendants' motion to compel the State to answer the interrogatories. The trial court relied on CR 33 in granting this motion. Under the civil rules, parties may use interrogatories to seek discovery of information that may or may not be admissible at trial, so long as the information "appears reasonably calculated to lead to the discovery of admissible evidence". CR 26(b)(1); *see* CR 33(b).

The civil rules, however, by their own terms apply only to civil cases. CR 1; *State v. Gonzalez*, 110 Wn.2d 738, 744, 757 P.2d 925 (1988). In *Gonzalez*, the defendant argued the civil rules supplemented the criminal rules to enlarge the permissible inquiry in taking deposition testimony in a criminal case. The court, however, rejected this argument, reasoning:

> CrR 4.7 sets out the exact obligations of the prosecutor and defendant in engaging in discovery, the detail of which suggests to us that no further supplementation should be sought from the civil rules.

*Gonzalez*, 110 Wn.2d at 744; *State v. Pawlyk*, 115 Wn.2d 457, 476, 800 P.2d 338 (1990). Therefore, under *Gonzalez*, a court in a criminal case should look to Superior Court Criminal Rule 4.7 instead of the civil rules in determining the permissible scope of criminal discovery. *Gonzalez*, 110 Wn.2d at 744.

CrR 4.7(a) lists the prosecutor's obligations in engaging in criminal discovery. CrR 4.7(a); *State v. Blackwell*, 120 Wn.2d 822, 826, 845 P.2d 1017 (1993). Under this provision, the prosecution is required to disclose to the defendant the information it intends to rely on in a hearing. CrR 4.7(a)(1)(i) (requiring the prosecution to disclose names of witnesses it intends to call at a hearing and the substance of their testimony); CrR 4.7(a)(1)(v) (requiring the prosecution to disclose any papers or documents it intends to use in a hearing).

At issue in this case, however, is not the State's obligation to disclose information it intends to rely on. Instead, this case concerns the defendants' request to discover *additional* information beyond that which the State intends to use. The information sought by the defendants is largely in the form of statistical information that has not yet been compiled.

■ If a defendant requests the disclosure of information beyond that which the prosecutor is specifically obligated to disclose under the discovery rules, the defendant's request must meet the requirements of CrR 4.7(e)(1). *Blackwell*, 120 Wn.2d at 828. This rule provides:

> Upon a showing of *materiality* to the preparation of the defense, and if the request is *reasonable*, the court in its discretion may require disclosure to the defendant of the relevant material and information not [otherwise specified in the rule].

(Italics ours.) CrR 4.7(e)(1). Thus, a defendant's discovery request under CrR 4.7(e)(1) must meet two threshold requirements before the court may exercise its discretion in granting the request: (1) the information sought must be material, and (2) the discovery request must be reasonable. If these two requirements are met, the trial court has the discretion to condition or deny the disclosure request if it finds the disclosure's usefulness is outweighed by a substantial risk of harm or unnecessary annoyance to any person. CrR 4.7(e)(2).

In this case, the defendants' interrogatories require the compilation of information from every felony investigation in

Spokane County during a 3-year period. This information includes the number of individuals who were arrested, required to post bond, and/or required to forfeit property during the 3-year period. The interrogatories also involved discovery of the number of cases in which probable cause for arrest was developed during the 3-year period, whether or not the suspects in these investigations were arrested, how many of those arrested were eventually charged, and whether or not the arrested persons posted bond and/or had property seized.

The defendants have not established this information is material to the first prong of the *Lidge* test, *i.e.*, whether any of the individual defendants suffered actual prejudice in the preparation of their own defenses. *See Dixon*, 114 Wn.2d at 861 (defendant's *own* loss of juvenile court jurisdiction resulting from preaccusatorial delay establishes prejudice). What has or has not occurred in the cases of other individuals has little, if any, relevance for determining whether an individual defendant has suffered actual prejudice in the preparation of his or her own defense.

The defendants also have not established the information they seek is material to the second prong of the *Lidge* test, which involves explaining why the delay occurred. The information they seek involves various details concerning the precise *scope* of the delay, rather than the *reasons* behind this delay. These interrogatories would, at best, merely confirm the fact that many cases were involved in the backlog, a fact the State has already acknowledged through its affidavits. Moreover, the information sought does not relate to the specific circumstances behind the delay in any individual case, aside from the backlog problem which the State has already acknowledged. The defendants have therefore not established that the materiality requirement contained in CrR 4.7(e)(1) has been met with regard to either the first or second part of the *Lidge* test.[3]

---

[3]In addition to requests for statistical information, the defendants included two .interrogatories seeking to discover the State's investigative and charging policies during the 3-year period in question. See Clerk's Papers, at 343-48. While investigative and charging policies have been found relevant to due process

CrR 4.7(e)(1) also requires a defendant to establish his or her discovery request is reasonable. The task of compiling information from every felony investigation occurring in the county during a 3-year period would be time consuming and burdensome. This request is not reasonable in light of the fact this information would merely confirm the uncontested fact that a large number of cases were involved in the backlog. *See State v. Zektzer*, 13 Wn. App. 24, 27, 533 P.2d 399 (trial court properly denied motion to compel answers to interrogatories that were oppressively broad in scope), *cert. denied*, 423 U.S. 1020 (1975).

The scope of discovery in a criminal case is within the sound discretion of the trial court and will not be disturbed absent a manifest abuse of discretion. *Pawlyk*, 115 Wn.2d at 470-71. We find such an abuse of discretion in this case. Neither the materiality nor the reasonableness prong of CrR 4.7(e)(1) has been met in this case. The defendants have not established the information they seek is discoverable under CrR 4.7(e)(1). The trial court therefore abused its discretion in granting the defendants' motion to compel the State to answer the interrogatories.

The State also argues the use of interrogatories in a criminal case may never be deemed appropriate, even if the information sought has been shown to be material. The information sought in this case has not been shown to be material, and we therefore do not reach this alternative argument.

---

claims based on preaccusatorial delay, *see, e.g., State v. Dixon*, 114 Wn.2d 857, 865, 792 P.2d 137 (1990) ("standard investigatory procedures" relevant for assessing preaccusatorial delay), we note this information has already been produced to the defendants. See Clerk's Papers, at 207-14. The State has in fact acknowledged its policy of prioritizing homicide and other major crimes in dealing with the staff reductions that resulted from the County's budget shortfall. In addition, affidavits from the Sheriff's office and Spokane Police Department indicate a policy of filing cases within 72 hours of a suspect's arrest. Clerk's Papers, at 207-14. The defendants have therefore not established that the information requested in these two interrogatories is material to the preparation of their defense since the State has already provided it.

The State next argues the trial court erred in allowing uncharged individuals to participate in the consolidated motion to dismiss. The defendants concede that the filing of a "case" is necessary to give the court jurisdiction to enter a criminal ruling. They argue, however, the uncharged individuals can voluntarily submit to the court's jurisdiction.

The fact these individuals wanted to "join" in the motion to dismiss does not alter the fact they have not yet been charged with a crime. An individual must be charged with a crime before a court can properly determine whether the charge should be dismissed. Any trial court ruling regarding whether these uncharged cases should be "dismissed" would be purely advisory. Advisory opinions are disfavored by courts. *See State v. Maloney*, 1 Wn. App. 1007, 1009, 465 P.2d 692 (1970). The trial court thus erred in allowing these uncharged individuals to "join" in the defendants' motion to dismiss.

### III

We reverse each of the trial court's rulings. The trial court erred in consolidating these cases, in ordering the State to answer the interrogatories, and in allowing uncharged defendants to "join" in the defendants' motion to dismiss. The defendants have not yet had the opportunity to show they suffered actual prejudice because of the preaccusatorial delay. We therefore remand for this determination.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, and GUY, JJ., concur.