# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46685-6-II |
| Respondent, | |
| v. | |
| EXPY SANABRIA, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — Expy Sanabria appeals his conviction and sentence for one count of unlawful possession of a controlled substance with intent to deliver. He argues that the trial court erred by (1) violating his right to self-representation, (2) denying his motion to suppress evidence gathered under a search warrant, (3) denying his motion to compel the discovery of police reports, (4) denying him a continuance to obtain testimony from a witness, and (5) imposing legal financial obligations (LFOs) without inquiring into his ability to pay them. The State concedes that the court erred by failing to inquire into Sanabria's ability to pay discretionary LFOs. In a pro se statement of additional grounds (SAG), Sanabria claims that (6) the prosecutor committed misconduct and (7) the trial court should have excluded two telephone calls made from jail.

We disagree with each of these arguments except the argument about LFOs. We accept the State's concession that the trial court erred by failing to inquire into Sanabria's ability to pay. Therefore, we affirm his conviction, but we remand to the trial court for consideration of Sanabria's ability to pay discretionary LFOs.

No. 46685-6-II

FACTS

A.    *Substantive Facts*

In early November 2013, a confidential informant (CI) notified officers that a man with the street name "X" was selling methamphetamine. Clerk's Papers (CP) at 131. The CI described X as Puerto Rican, possibly residing in Lakewood, and driving a four-door 2004 black Acura TL with a license plate beginning with "311." CP at 131. Officers, including Lakewood Police Officer Sean Conlon, arranged with the CI to conduct a controlled purchase of drugs from X. Meanwhile, officers located a vehicle matching the CI's description of the Acura driven by X. The Acura was parked in the driveway of a residential double-wide trailer in Lakewood.

At the time of the planned controlled buy, officers conducting surveillance saw a Hispanic male matching X's description leave the double-wide in Lakewood and enter the black Acura. The officers followed the subject as he drove directly to the location where the CI had arranged to buy drugs from X. After the transaction, officers followed X as he drove directly back to the double-wide. The CI provided the methamphetamine purchased from X to the officers. Officers later conducted a second controlled buy. Again, the same man matching X's description left the double-wide, entered the black Acura, drove directly to the CI's location, sold the CI methamphetamine, then returned directly to the double-wide.

Officer Jeff Martin of the Tacoma FBI South Sound Gang Task Force filed an affidavit in support of an application for a search warrant to seek evidence of X's unlawful possession and delivery of a controlled substance.[1] The affidavit alleged the facts described above: that the CI

---

[1] RCW 69.50.401.

2

had described X and the Acura and had stated that X possibly lived in Lakewood, and that the two controlled transactions had occurred as described above. Based on the circumstances outlined in the affidavit, Officer Martin believed that X had committed unlawful possession and delivery of a controlled substance, contrary to RCW 69.50.401(2)(b). The application sought to search the interior of the double-wide and the Acura and to seize evidence of the illegal sale of methamphetamine. A judge issued the requested search warrant.

On November 20, 2013, officers searched the premises and Acura pursuant to the warrant. In the double-wide, they found methamphetamine, marijuana, currency, ammunition, and various drug paraphernalia. Specifically, Officer Conlon found methamphetamine in a cooler in the double-wide.[2] Inside the double-wide, officers also found some of Sanabria's documents, including Sanabria's driver's license, photo identification cards (IDs), and photographs of him.[3]

At the beginning of the search, officers arrested Sanabria as he drove the Acura described in the search warrant toward the double-wide and searched him incident to arrest. They found methamphetamine and $781 in cash in Sanabria's pockets. The Acura revealed no evidence.

---

[2] No other officers were present when Officer Conlon discovered this evidence. At trial, Officer Conlon did not testify, but Sanabria cross-examined the other officers about the foundation of their knowledge of where and how Officer Conlon discovered the evidence.

[3] Officers later determined that Sanabria's mother owned the double-wide.

The State charged Sanabria by amended information with one count of unlawful possession of a controlled substance with intent to deliver (methamphetamine).[4] Trial was set for January 13, 2014.

B.      *Motion To Appear Pro Se*

On December 26, 2013, Sanabria wrote a letter to the trial court informing the court of a conflict with his counsel. At an omnibus hearing on January 10, 2014, apparently because of the December 26 letter, Sanabria's assigned counsel told the court that Sanabria wished to appear pro se and file several motions. Sanabria said: "Yeah, that's correct, Your Honor. Also, I'd like to have a standby, but not Jane Melby. If I could, could it be someone else as a standby?" Verbatim Report of Proceedings (VRP) (Jan. 10, 2014) at 3. Sanabria explained the conflict with Ms. Melby: he felt that she was not providing the amount or kind of help he desired. The court inquired about whether Sanabria had been to law school and whether he had attempted to contact the Department of Assigned Counsel. Sanabria repeated: "With all due respect, Your Honor, I would still like to go pro se with another lawyer." VRP (Jan. 10, 2014) at 4. The court responded: "Well, you get a lawyer at public expense. You don't get to lawyer shop." VRP (Jan. 10, 2014) at 4. Sanabria reiterated that he felt he would not receive a fair trial if he continued with his current counsel. The court, apparently believing Sanabria desired a different lawyer, expressed concern about trial being delayed if Sanabria changed counsel.

---

[4] RCW 69.50.401(1), (2)(b). Initially, the State had also charged Sanabria with possession of marijuana with intent to deliver. RCW 69.50.401(2)(c). On June 23, during jury selection, the State amended the information, dismissing the marijuana charge.

After further colloquy, the court said: "If you want to go pro se, I'll let you go pro se, but I'm going to ask Ms. Melby to remain as standby." VRP (Jan. 10, 2014) at 8. The court noted that it thought Mr. Sanabria was "doing [himself] a disservice" by proceeding pro se. VRP (Jan. 10, 2014) at 9. It concluded: "I'll give you a little bit to think about it but, you know, you go pro se at your own risk. . . . Do you want to think about it?" VRP (Jan. 10, 2014) at 10. Sanabria asked how much time he could have to think about it. The trial court informed Sanabria that trial had been continued for other reasons and concluded:

> I'm going to deny the motion without prejudice at this time. Think about it, okay? And "without prejudice" means if you decide in a week that you just got [sic] to do it, then you can come back and try to do it. I don't want you to jam yourself up, though, and I think you're getting ready to hurt yourself.

VRP (Jan. 10, 2014) at 10. The trial court issued a continuance at the request of both parties, citing, "Discovery motions outstanding; Defendants may motion [sic] to go pro se." CP at 20.

About two weeks later, on January 24, Sanabria filed several handwritten, pro se documents, including 12 requests for discovery. One of the documents was entitled "Affidavit in Support of Motion to Proceed Pro Se." CP at 27. It stated in part that Sanabria "moves this honorable court to proceed pro se . . . . I am aware of the dangers by representing myself, but I feel this is the only way that I'm going to get any fair justice." CP at 27. Sanabria attached a proposed order granting his motion to represent himself. In an apparent attempt to note his motions, Sanabria included a "Motion to Set Docket" for January 28. CP at 21. The record does not show that Sanabria served the State with any of these documents, nor that the trial court saw them. The trial court did not hold a colloquy to consider Sanabria's request to proceed pro se after he filed this document.

5

Sanabria proceeded with assigned counsel. At subsequent pretrial hearings on March 11, April 14, and April 16, Sanabria did not reiterate his request to represent himself, nor did he call the trial court's attention to his January 24 document. On April 25, Sanabria again moved pro se to substitute counsel. The trial court denied this motion because trial was beginning. Sanabria reminded the trial court that he had previously "asked to go pro se also," but that it was now too late for him to prepare to represent himself, given that the trial court had denied his motion to represent himself on January 10. VRP (May 1, 2014) at 8. Sanabria did not specifically mention his January 24 "Affidavit in Support of Motion" to proceed pro se. The trial court reiterated its ruling that it was too late for Sanabria to change counsel.

C.    *Motion To Suppress and Motion for Franks Hearing*

On March 21, Sanabria moved to suppress the evidence seized from the double-wide and from his person, arguing that the affidavit failed to establish probable cause to support the search warrant's issuance. In the same motion, Sanabria moved for a *Franks*[5] hearing alleging that the search warrant's affiant intentionally omitted material facts from the affidavit. The trial court denied both motions.[6] The trial court found that the controlled transactions as described in the affidavit established probable cause because during both transactions a man meeting X's description left the double-wide and traveled directly to the meeting place with the CI, sold the CI methamphetamine, then returned directly to the double-wide in the Acura. Thus, the trial court ruled that there was a sufficient nexus between the double-wide and Sanabria's violation of

---

[5] *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

[6] Sanabria sought discretionary review of this ruling, which we denied.

the controlled substances law. Regarding the request for a *Franks* hearing to ascertain the truth

of the affidavit, the trial court ruled that Sanabria "could not establish by a preponderance of the

evidence that there was [a material omission], intentional misrepresentation or a reckless

disregard for the truth by the officer who authored the warrant." CP at 134. Thus, the trial court

ruled that Sanabria was not entitled to suppression of the evidence obtained from the search, nor

to a *Franks* hearing.[7]

D.     *Discovery Demands*

On January 31 (before the motion to suppress), Sanabria's counsel filed a demand for

discovery seeking police reports of the two controlled transactions, as they formed the basis of

the search warrant. At a hearing on this motion, Sanabria acknowledged that the State was not

intending to call the CI to testify and that Sanabria was not charged with the controlled

transactions; he argued instead that the police reports "were used as the basis for the search

warrant." VRP (March 11, 2014) at 2. Sanabria argued that he should be able to examine the

police reports to determine whether the information given in the affidavit was accurate. The trial

court denied this motion to compel discovery.

On May 12 (after the motion to suppress was denied), Sanabria's counsel again moved

the court to compel the State to provide copies of police reports, and for a *Franks* hearing,

alleging that material facts were omitted from the affidavit which amounted to a

misrepresentation. The trial court denied the motion for a *Franks* hearing. Sanabria then argued

that he needed access to the police reports of the controlled transactions because the controlled

---

[7] Sanabria does not appeal the denial of a *Franks* hearing.

transactions created probable cause to arrest Sanabria, which in turn led to the evidence found on Sanabria's person. He argued that he needed access to the police reports to determine whether the search of his person incident to arrest was validly based on probable cause. The trial court again denied the motion to compel discovery.

E.      *Motion for Continuance*

The State subpoenaed Officer Conlon for trial. During jury selection, both parties learned that Officer Conlon was on vacation and would be unavailable to testify. On June 24, Sanabria subpoenaed Officer Conlon to appear the following day.[8] As jury selection continued on June 24, Sanabria requested a continuance so that Officer Conlon could testify when he returned. He argued that he wanted and needed Officer Conlon's testimony, but he did not tell the trial court at this time why Officer Conlon's testimony was material to his defense.[9] The trial court denied the motion for a continuance.

F.      *Trial and Sentencing*

At trial, witnesses testified to the facts described above about the evidence obtained from the November 20 search of Sanabria's person, the double-wide, and the Acura. The jury found Sanabria guilty as charged.

---

[8] Sanabria's attorney signed this subpoena on June 24, and the subpoena was personally served upon a worker at the front desk of the police station on June 25.

[9] As explained below, both parties' briefs misrepresent the record. Sanabria did not argue that Officer Conlon was a material witness when he requested a continuance. In a different context two days later, the parties argued about whether Officer Conlon was a material witness for purposes of a missing witness instruction, and the trial court then ruled that he was not.

At sentencing, the trial court included boilerplate language in its judgment and sentence that Sanabria had the ability to pay his LFOs, but it did not inquire into Sanabria's ability to pay. Sanabria objected to the imposition of the LFOs at sentencing because he was indigent. Nevertheless, the court imposed LFOs. Sanabria appeals his conviction and sentence.

## ANALYSIS

### I. RIGHT TO SELF-REPRESENTATION

Sanabria argues that the trial court violated his right to self-representation when it denied his motion to represent himself at the January 10 hearing and never ruled on his later document purporting to be a motion to appear pro se. The State argues that Sanabria's written document was not a "motion," and that Sanabria's January 10 request to represent himself was equivocal. Br. of Resp't at 22-23. We hold that the trial court did not abuse its discretion by denying Sanabria's motion to represent himself because the record as a whole demonstrates that Sanabria's request to represent himself was equivocal.

A.    *Standard of Review*

We review decisions on the right to self-representation for abuse of discretion. *State v. Coley*, 180 Wn.2d 543, 559, 326 P.3d 702 (2014), *cert. denied*, 135 S. Ct. 1444 (2015). We reverse such decisions only if they are manifestly unreasonable, rely on unsupported facts, or apply an incorrect legal standard. *Coley*, 180 Wn.2d at 559.

The Washington Constitution explicitly grants criminal defendants the right to represent themselves, and the Sixth Amendment to the United States Constitution provides the same right implicitly. *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010). When the trial court denies this right without justification, we reverse. *Madsen*, 168 Wn.2d at 503. Nevertheless,

9

courts must "'indulge in every reasonable presumption'" against a defendant's waiver of his right to counsel. *In re Det. of Turay*, 139 Wn.2d 379, 396, 986 P.2d 790 (1999) (quoting *Brewer v. Williams*, 430 U.S. 387, 404, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977)).

When a defendant asks to represent himself, the trial court first must determine whether the request is unequivocal and timely. *State v. Stenson*, 132 Wn.2d 668, 737, 940 P.2d 1239 (1997). If the request was both unequivocal and timely, the trial court must determine if the request was voluntary, knowing, and intelligent. *Madsen*, 168 Wn.2d at 504.

Regarding timeliness, "'[i]f the demand for self-representation is made . . . well before the trial or hearing and unaccompanied by a motion for a continuance, the right of self-representation exists as a matter of law.'" *Madsen*, 168 Wn.2d at 508 (emphasis omitted) (quoting *State v. Barker*, 75 Wn. App. 236, 241, 881 P.2d 1051 (1994)).

A request for self-representation can be unequivocal even if the defendant couples it with a request in the alternative for new counsel. *Madsen*, 168 Wn.2d at 507; *Stenson*, 132 Wn.2d at 740-41. Nevertheless, the fact that a defendant couples a motion to represent himself with a motion for new counsel may be a factor in finding that the request for self-representation was equivocal, when viewed in light of the record as a whole. *Stenson*, 132 Wn.2d at 740-41.

B.      *Request was Equivocal*

The State argues that Sanabria's motion to represent himself was equivocal. We agree.[10]

---

[10] As a preliminary matter, the State argues that Sanabria's January 24 document entitled "Affidavit in Support of Motion to Proceed Pro Se" was not a motion to proceed pro se, and therefore, Sanabria never properly raised his right to represent himself after the January 10 hearing. Br. of Resp't at 22. We do not decide whether Sanabria's document was a "motion;"

At the omnibus hearing on January 10, the trial court was not certain whether Sanabria was merely dissatisfied with his counsel or whether he truly wished to represent himself. It appears that the State initially called the issue of Sanabria's desire to proceed pro se to the trial court's attention because Sanabria had filed a document expressing dissatisfaction with his appointed attorney. Sanabria said: "I need to do this on my own *or with somebody*—with a standby, another standby," and he said he wanted to "go pro se *with another lawyer*." VRP (Jan. 10, 2014) at 3-4 (emphasis added). In other words, the request was equivocal during the hearing. It was unclear whether Sanabria was asking unconditionally to proceed pro se, or whether he was making this request only because he did not wish to proceed with his attorney. The trial court denied the motion but invited Sanabria to decide whether he truly wished to represent himself.[11]

Apart from filing the January 24 document entitled "Affidavit in Support of Motion to Proceed Pro Se" in the court file, Sanabria never again asserted his desire to proceed pro se, nor did he call his January 24 document to the trial court's attention. After January 24, Sanabria was present during at least four pretrial hearings. During these hearings, Sanabria did not reassert his desire to represent himself, nor did he call the court's attention to his January 24 document. He did, however, move again for new counsel in late April. During the May 1 hearing, Sanabria

---

instead, we review the record as a whole to determine whether Sanabria made an unequivocal request to represent himself.

[11] We note that it is somewhat difficult to know precisely what Sanabria wished to say on January 10 because the trial court interrupted him several times, cutting off his statements. Importantly, the trial court cut short Sanabria's response to the trial court's question whether Sanabria "[wanted] to think about" proceeding pro se. VRP (Jan. 10, 2014) at 10.

spoke to the trial court about this motion. He reasserted his dissatisfaction with his assigned counsel, and he acknowledged that he could not begin to represent himself at this late date close to trial. Thus, it appeared that Sanabria primarily wanted new counsel—not that he desired to represent himself.

Although a defendant's motion to represent himself is not unequivocal merely because he simultaneously requests standby counsel, this factor may assist the trial court in concluding that a request is equivocal. *Madsen*, 168 Wn.2d at 507; *Stenson*, 132 Wn.2d at 740-41. Here, Sanabria's statements in the January 10 hearing wavered between requesting a new attorney and requesting to appear pro se. Moreover, Sanabria did not again speak to the trial court about his desire to proceed pro se after the trial court instructed him to "[t]hink about it." VRP (Jan. 10, 2014) at 10. Thus, the trial court denied the motion after the January 10 hearing when it was not sure whether Sanabria truly wanted to represent himself or merely wanted to substitute counsel, and then it never again heard that Sanabria still desired to represent himself. It did not abuse its discretion by denying Sanabria's motion because the record as a whole demonstrates that the request was equivocal. *See Coley*, 180 Wn.2d at 561.

## II. SUPPRESSION OF EVIDENCE

Sanabria argues that the trial court erred by denying his motion to suppress evidence because probable cause did not support the search warrant. He argues that there was an insufficient nexus between the double-wide, the Acura, and the evidence of the illegal activity. We disagree.

12

No. 46685-6-II

A.      *Legal Principles*

Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution, probable cause must support a search warrant. *State v. Myers*, 117 Wn.2d 332, 336-37, 815 P.3d 761 (1991). "We generally review the issuance of a search warrant only for abuse of discretion," giving "great deference to the issuing judge or magistrate." *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). "Although we defer to the magistrate's determination, the trial court's assessment of probable cause is a legal conclusion we review de novo." *Neth*, 165 Wn.2d at 182. At the suppression hearing, the trial court sits in an appellate-like capacity. *Neth*, 165 Wn.2d at 182. Its review, like ours, is limited to the four corners of the affidavit supporting probable cause. *Neth*, 165 Wn.2d at 182. We evaluate search warrants in a common sense, practical manner, not hypertechnically. *State v. Perrone*, 119 Wn.2d 538, 549, 834 P.2d 611 (1992).

To establish probable cause, the affidavit supporting the search warrant must "set[] forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched." *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). The connection between the defendant, the criminal activity, and the place is known as a "nexus." *Neth*, 165 Wn.2d at 183.

B.      *Probable Cause in Affidavit*

Sanabria argues specifically that the warrant failed to provide a sufficient nexus between the double-wide and evidence of illegal activity because it lacked certain supporting details, such

13

as information about who owned the double-wide and the Acura, X's name, and where X lived. We disagree.

The State cites *State v. G.M.V.* to support its argument that probable cause supported the warrant. 135 Wn. App. 366, 369-72, 144 P.3d 358 (2006), *review denied*, 160 Wn.2d 1024 (2007). In *G.M.V.*, Division Three of this court held that there was a sufficient nexus in a residential search warrant supported by law enforcement officers' observations of a suspect leaving a residence before a controlled transaction and returning directly back to it immediately after the transaction. *See* 135 Wn. App. at 372. Law enforcement officers twice observed the suspect return directly to the home after the transactions. 135 Wn. App. at 369. The fact that the suspect took a direct route from the residence to the controlled buy and then back again to the same residence established the required nexus between the residence and the crime. *See* 135 Wn. App. at 372.

Here, like in *G.M.V.*, officers twice watched a man matching X's description leave the double-wide in the Acura, drive directly to the meeting location with the CI, sell the CI methamphetamine, then return directly to the double-wide. These facts, as provided in the probable cause affidavit, establish the required nexus between Sanabria, the crime of selling controlled substances, and the locations to be searched. Thus, the facts described in the affidavit connected the crime, the defendant, and the targets of the search warrant. The officers' observations of X returning to the double-wide in the Acura after both controlled buys created a reasonable inference that the double-wide and the Acura likely contained evidence of the crime. *Thein*, 138 Wn.2d at 140.

Sanabria assigns error to the trial court's finding of fact 4, which provides that the "CI reported that 'X' resided in the City of Lakewood." CP at 131. But because the trial court took no evidence, we do not evaluate whether this finding is supported by substantial evidence. Indeed, the facts are undisputed. We ask instead whether the probable cause affidavit as a whole provided the required nexus. As explained above, it did. Any information or finding about where X lived was immaterial because the probable cause affidavit established that the double-wide and the Acura likely contained evidence of the sale of drugs.

Because probable cause supported the warrant, Sanabria fails in arguing that more details were needed. Sanabria cites no law that such details are necessary to establish probable cause.[12] Thus, we affirm the trial court's denial of the motion to suppress.

### III. DISCOVERY

Sanabria argues that the State violated discovery rules by failing to provide the police report supporting his arrest and the search warrant, and therefore, the trial court abused its discretion by denying his motion to provide these reports. He argues that this lack of disclosure violated his due process right to favorable and material evidence of his guilt or innocence. We disagree.

---

[12] Sanabria cites *State v. Goble*, 88 Wn. App. 503, 504-05, 513, 945 P.2d 263 (1997), in which case we reversed the issuance of a search warrant for Goble's home because the evidence showed only that Goble may have intercepted drugs through the mail at a post office. In other words, there was no connection to Goble's home, and therefore no grounds upon which to issue a search warrant for the home. *Goble*, 88 Wn. App. at 512. But in this case, the affidavit provided that X left the double-wide in the Acura to conduct the controlled buys; thus, unlike in *Goble*, the affidavit connected the place to be searched with the crime.

The trial court has wide latitude to decide discovery matters under CrR 4.7. *State v. Hutchinson*, 135 Wn.2d 863, 882, 959 P.2d 1061 (1998). We review its decisions on discovery matters for a manifest abuse of discretion. *State v. Vance*, 184 Wn. App. 902, 911, 339 P.3d 245 (2014), *review denied*, 182 Wn.2d 1020 (2015). A trial court abuses its discretion when it makes decisions based on untenable grounds or for untenable reasons. [13] *Vance*, 184 Wn. App. at 911.

CrR 4.7(a)(1) requires the State to disclose certain "material and information within the prosecuting attorney's possession or control," including "the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial, together with any written or recorded statements and the substance of any oral statements of such witnesses." The rule is silent regarding police reports. Additionally, CrR 4.7(c) requires the State upon request to "disclose any *relevant* material and information regarding: (1) Specified searches and seizures." (Emphasis added). Where the defendant requests information beyond what the State must disclose, the defendant must show that the additional information is both material to his defense and is reasonable. *State v. Norby*, 122 Wn.2d 258, 266, 858 P.2d 210 (1993); CrR 4.7(e)(1). Our Supreme Court has held that defendants have "no per se right to obtain copies of police reports." *State v. Coe*, 101 Wn.2d 772, 785, 684 P.2d 668 (1984).

A "defendant's constitutional due process right to disclosure relates only to evidence which is favorable to the defendant and material to guilt or punishment." *State v. Blackwell*, 120

---

[13] Sanabria's brief addresses this issue in two parts: first, he argues that the State violated discovery rules. Second, and in the alternative, he argues that the trial court erred by denying his motion to compel discovery of the police reports. We address these arguments as the single issue whether the trial court erred by denying Sanabria's motion to compel discovery, because the remedy for any discovery violations would be reversing the trial court's ruling.

Wn.2d 822, 828, 845 P.2d 1017 (1993) (citing *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)). The mere possibility that undisclosed evidence might have helped the defense or might have affected the trial outcome does not establish materiality. *Blackwell*, 120 Wn.2d at 828. Instead, a defendant "must advance some factual predicate which makes it reasonably likely the requested file will bear information material to his or her defense." *Blackwell*, 120 Wn.2d at 830.

Here, Sanabria failed to advance a factual predicate showing that the police reports were material to his guilt or punishment; instead, he showed a mere possibility that they would be material. *Blackwell*, 120 Wn.2d at 828. For example, he said that he wanted to "confirm" that the affidavit correctly restated the information in the police reports. VRP (Mar. 11, 2014) at 2. He wanted to determine "how long the confidential informant has worked with Officer Martin, whether or not this person is getting paid or working off a case," and the like. VRP (Mar. 11, 2014) at 2-3. He said he was concerned about the affidavit's assertion that the CI was reliable, and wanted to explore whether this was accurate. Similarly, at a later colloquy on the same issue, Sanabria argued that he should be allowed to examine whether the search of Sanabria's person was valid. But Sanabria never stated any factual basis for how the police reports would assist in his defense; he merely stated that they *might* yield material information. Because Sanabria failed to advance a factual predicate making it reasonably likely that the police reports would bear information material to his guilt or punishment, he has failed to show that the trial court abused its discretion by denying his motion to compel discovery of the police reports. *See Blackwell*, 120 Wn.2d at 828-30.

IV. MOTION FOR CONTINUANCE

Sanabria argues that the trial court abused its discretion by denying his motion for a continuance so a subpoenaed witness, Officer Conlon, could testify.[14] The State argues that Sanabria was not entitled to a continuance because he failed to exercise due diligence in seeking Officer Conlon's testimony. We agree with the State.

We review a trial court's grant or denial of a continuance for manifest abuse of discretion. *State v. Cannon*, 130 Wn.2d 313, 326, 922 P.2d 1293 (1996). A manifest abuse of discretion exists only when no reasonable person would take the view adopted by the trial court. *State v. Woolworth*, 30 Wn. App. 901, 906, 639 P.2d 216 (1981). To obtain a continuance, a defendant must show that he has exercised due diligence to assure the witness's attendance and that the witness can probably be found if the trial court grants the continuance. *State v. Lane*, 56 Wn. App. 286, 296, 786 P.2d 277 (1989).

Here, the State subpoenaed Officer Conlon in the months before trial, but Sanabria did not subpoena him until jury selection was under way on June 24. The same day, Sanabria sought a continuance to secure Officer Conlon's testimony. In other words, Sanabria asked for a continuance to secure Officer Conlon's testimony at the same time as he subpoenaed Officer Conlon for the first time. This occurred on the second day of jury selection, the day before

---

[14] Sanabria also argues that the trial court erred by ruling that Officer Conlon (who found some of the evidence during the search of the double-wide) was not a material witness. But the trial court made no such ruling relevant to the motion for continuance. Both parties cite a colloquy about whether Officer Conlon was a material witness, but this colloquy occurred two days *after* the denial of the motion for a continuance. It concerned the separate issue of whether Sanabria was entitled to a missing witness instruction.

testimony began. The subpoena was not served on Officer Conlon until the following day—after the motion for a continuance had been denied.

These facts demonstrate that Sanabria did not exercise due diligence in seeking Officer Conlon's testimony. Although the State had subpoenaed Officer Conlon, it was the State's prerogative not to call him. Thus, by relying on the State's subpoena, Sanabria ran the risk that the State would not call Officer Conlon to testify, and Sanabria would not have an opportunity to cross-examine him. Sanabria's reliance on the State's subpoena does not demonstrate diligence in seeking the testimony Sanabria claims he needed from Officer Conlon. By relying on the State's subpoena, Sanabria did nothing to secure Officer Conlon's testimony until trial began. Thus, Sanabria cannot simply point to his inaction to demonstrate that he exercised due diligence. The trial court did not abuse its discretion by denying Sanabria's motion for a continuance.

V. ABILITY TO PAY LEGAL FINANCIAL OBLIGATIONS

Sanabria argues, and the State concedes, that the trial court erred by imposing discretionary LFOs without inquiring into Sanabria's ability to pay them. We accept the State's concession and remand to the trial court to make this inquiry.

A trial court may not order a defendant to repay court costs unless the defendant "is or will be able to pay them." RCW 10.01.160(3). "In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose." RCW 10.01.160(3). The trial court must conduct this individualized inquiry on the record before imposing discretionary LFOs. *State v. Blazina*, 182 Wn.2d 827, 838-39, 344 P.3d 680 (2015). Because the trial court did not

conduct an individualized inquiry into Sanabria's ability to pay before imposing the LFOs, we accept the State's concession and remand to the trial court to conduct this inquiry. *Blazina*, 182 Wn.2d at 838-39; RCW 10.01.160(3).

## STATEMENT OF ADDITIONAL GROUNDS

In a SAG, Sanabria claims that the prosecutor committed misconduct in a variety of ways and two telephone calls made from jail should have been excluded. We disagree.

### I. PROSECUTORIAL MISCONDUCT

Sanabria claims that the prosecutor committed misconduct by (1) charging Sanabria without sufficient supporting evidence; (2) initially charging the additional count of possession with intent to distribute marijuana to induce Sanabria to plead guilty, then dismissing that charge when Sanabria proceeded to trial; (3) amending the charges against Sanabria's codefendant Dany Ann to simple possession without similarly amending Sanabria's charges, and without explanation; (4) failing to provide the police report of the controlled transactions; and (5) failing to obtain a continuance until Officer Conlon could testify. We hold that none of these actions constitutes reversible prosecutorial misconduct.

Prosecutorial misconduct is grounds for reversal if the prosecuting attorney's conduct was both improper and prejudicial. *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011). Absent a timely objection, any misconduct claim is waived unless the conduct is so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by a curative instruction to the jury. *State v. Warren*, 165 Wn.2d 17, 43, 195 P.3d 940 (2008).

A.      *Sufficiency of the Evidence for Charge and Conviction*

Sanabria argues that the prosecutor committed misconduct by charging him without sufficient supporting evidence. But the jury found beyond a reasonable doubt that Sanabria committed his crime. The prosecutor did not commit misconduct by charging Sanabria.

Sanabria next argues that there was insufficient evidence of his possession of methamphetamine with intent to distribute because the State did not offer tangible evidence that he lived at or rented the double-wide. But officers testified that they discovered photographs of Sanabria, his driver's license, and photo IDs. They also testified that Sanabria's mother owned the trailer. The jury was entitled to weigh this evidence of Sanabria's relationship to the double-wide, as well as his possession of the methamphetamine on his person. Sanabria's ownership or rental agreement over the double-wide where the search occurred was not an element of the charged offense. RCW 69.50.401. Thus, we hold that the evidence supported the charge and conviction.

B.      *Inducement To Plead Guilty*

Sanabria argues that the prosecutor attempted to force Sanabria to plead guilty by charging him with one count of possession of marijuana with intent to distribute. Sanabria notes that the prosecutor dismissed that charge due to a lack of supporting evidence at the outset of trial. But prosecutors have great discretion in determining how and when to file criminal charges. *State v. Korum*, 157 Wn.2d 614, 625, 141 P.3d 13 (2006). Prosecutors should not overcharge in order to obtain a guilty plea, RCW 9.94A.411(2)(a)(ii), but prosecutors "will" file charges where it is probable that a reasonable and objective fact finder would convict the defendant. RCW 9.94A.411(2)(a). Furthermore, because Sanabria did not plead guilty and

because the marijuana charge was dismissed, he cannot show any prejudice from the prosecutor's actions. Any pressure he felt to plead guilty did not induce him to forego his trial, and he did not face the marijuana charge at trial. This claim fails.

C.      *Amended Charges*

Sanabria claims that the prosecutor committed misconduct by amending his codefendant's[15] charges to simple possession without similarly amending Sanabria's charges and without offering a valid reason to be lenient to only one codefendant. This claim fails. It is within the prosecutor's discretion to file charges. *Korum*, 157 Wn.2d at 625. And Sanabria cannot show prejudice from the prosecutor's decision to amend Sanabria's codefendant's charge.

D.      *Police Report*

Sanabria claims that the prosecutor committed misconduct by failing to provide the police report detailing the controlled transactions. We addressed the trial court's rulings on Sanabria's motion to compel this discovery above. To the extent Sanabria argues merely that the prosecutor committed misconduct by withholding this discovery, this claim fails. The trial court properly ruled that Sanabria was not entitled to this discovery. Thus, the prosecutor did not commit misconduct by declining to disclose the police reports.

E.      *Officer Conlon's Absence*

Sanabria claims that the prosecutor committed misconduct by failing to obtain a continuance or otherwise secure Officer Conlon's testimony so that Sanabria could "face [his] accuser." SAG at 3. This claim fails. Sanabria implies that the prosecutor intentionally

---

[15] Sanabria was tried together with Dany Ann, who was present in the double-wide during the search.

withheld Officer Conlon's testimony and failed to try hard enough to secure his presence. But the record shows that the State twice subpoenaed Officer Conlon and attempted to locate him in the early days of trial. Moreover, the prosecutor was under no obligation to call Officer Conlon as a witness; instead, the State was "entitled to prove its case by evidence of its own choice." *Old Chief v. U.S.*, 519 U.S. 172, 186, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997). Thus, Sanabria cannot show that the prosecutor engaged in misconduct by proceeding without the testimony of Officer Conlon.

## II. TELEPHONE CALLS

Sanabria claims evidence of two telephone calls made from jail should have been excluded. The trial court admitted evidence of two incriminating telephone calls made from jail using Sanabria's pin number and his name. A witness testified that jail inmates sometimes share their pin numbers with each other (contrary to jail rules), or steal pin numbers from other inmates. Sanabria argues that this evidence should have been excluded because it was unfairly prejudicial, as another inmate may have used Sanabria's pin. But Sanabria's claim goes to the weight, not the admissibility, of the telephone calls. We do not reweigh evidence or decide witness credibility. *See State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). Sanabria was able to cross-examine the witness about whether Sanabria was the source of the telephone calls. At that point, it was up to the jury to determine how much weight to give the calls. This claim fails.

In conclusion, we affirm Sanabria's conviction. We remand to the trial court for consideration of Sanabria's ability to pay discretionary LFOs.

No. 46685-6-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J

We concur:

_____
Lee, J.

_____
Melnick, J.