[No. 72540-3. En Banc.]
Argued February 25, 2003.    Decided June 19, 2003.

THE STATE OF WASHINGTON, *Petitioner*, v. GREGORY MICHAEL ROHRICH, *Respondent*.

---

[1] *See* James Bond, *The Initiative Process: The Supreme Court Versus the People*, 56 WASH. ST. B. NEWS, June 2002, at 42.

648

*Denis P. Tracy, Prosecuting Attorney*; *James H. Kaufman*; and *Pamela B. Loginsky* (of *Washington Association of Prosecuting Attorneys*), for petitioner.

*John S. Snyder* (of *Snyder Law Office*), for respondent.

Owens, J. — At issue is whether the trial court properly dismissed under CrR 8.3(b) a first degree child molestation charge filed 18 months after the apparent completion of the investigation. The Court of Appeals affirmed the dismissal on the grounds that, as a result of the preaccusatorial delay in charging the defendant, witnesses' memories could have faded, thereby prejudicing the defendant's right to a fair trial. Because we agree with the State's position that dismissal under CrR 8.3(b) due to a delay in charging requires a showing of not merely speculative prejudice but actual prejudice to the defendant's right to a fair trial, we reverse the Court of Appeals.

## FACTS

In 1993, a jury found Gregory Rohrich guilty of the first degree rape and first degree child molestation of his eight-year-old stepdaughter. On June 18, 1996, Division Three of the Court of Appeals reversed the convictions and remanded the matter for a new trial. *State v. Rohrich*, 82 Wn. App. 674, 679, 918 P.2d 512 (1996) (holding that, because child had not testified within meaning of RCW 9A.44.120, trial court abused its discretion by admitting hearsay statements without proof of unavailability and corrobora-

tive evidence). On July 3, 1997, this court affirmed the Court of Appeals. *State v. Rohrich*, 132 Wn.2d 472, 474, 939 P.2d 697 (1997) (concluding that child does not testify within meaning of statute "when she does not give testimony describing the acts of sexual contact alleged in the hearsay").

On August 15, 1997, Rohrich appeared with counsel at a pretrial release hearing before the original trial judge. Whitman County Prosecutor James H. Kaufman stated at that hearing that investigations were pending regarding an additional victim and her sister, both of whom had been interviewed the previous day.

The details of the origin and progress of that investigation were later recounted in the December 10, 1997, affidavit of Deputy (later Sergeant) Kirk Banks of the Whitman County Sheriff's Office. According to Deputy Banks, the mother of K.V. (age 12) and A.V. (age 10) contacted Sergeant Hamilton on August 7, 1997, to report that her daughters "had disclosed" that Rohrich had "sexually assaulted" them five years prior. Clerk's Papers (CP) at 111. The Banks affidavit explained the delay as follows:

> The reason for the long gap between the assault and the reporting is Greg was convicted in a previous sexual assault case and was sentenced to prison. Greg had appealed his prior conviction and was currently incarcerated . . . awaiting transfer to Whitman County Correctional Facility for his Appeal Hearing. The issue of Greg being released has been talked about in the family and was overheard by [K.V.] and [A.V.] prompting them to make the disclosure to [their mother].

*Id.*; *see also* CP at 2.

Deputy Banks interviewed K.V. on August 8, 1997. He taped the interview and afterward told K.V.'s mother that a second interview might be needed. Deputy Banks interviewed A.V. the following day. According to his affidavit, he was also present (behind a two-way mirror) when both K.V. and A.V. were subsequently interviewed by Dr. Greg Wilson of Wilson Psychological Services in Pullman. That interview apparently occurred in September 1997 because Dr.

Wilson, who had begun working with K.V. and A.V. in August 1997 (and had, "[w]ith their mother's consent, . . . recorded some disclosure sessions"), recalled that "[a] law enforcement officer observed two of the videotaped interviews in September, 1997." CP at 173.

The prosecutor received the Banks affidavit in December 1997, and on December 16, 1997, Rohrich's attorney Charles Dorn executed a declaration mentioning "an uncompleted investigation of our client."[1] In mid-June 1998, the prosecutor's office forwarded a police report (allegedly the Banks affidavit) to Rohrich's attorneys.

Negotiations regarding the original charges concluded on November 24, 1998, when Rohrich pleaded guilty to one count of attempted first degree child molestation and was sentenced to 51 months; with time served and good time credit, he was released on community supervision. The State's "Checklist for Plea Negotiations" limited the plea agreement to the remanded proceedings, excluding "any other case or investigation." Pl.'s Ex. 2, at 2.

Continuing the investigation of the August 1997 allegations,[2] on December 14, 1998, Dr. Wilson again interviewed K.V. and provided the taped statement to the Whitman County Sheriff's Office. On March 23, 1999, the prosecutor received a transcript of the taped statement.

On July 1, 1999, Rohrich was charged with one count of first degree child molestation for his alleged attack on K.V., occurring between June 1, 1991, and June 30, 1993. Rohrich moved to dismiss the charge on November 19, 1999, but did not file his initial brief on the motion until

---

[1] CP at 117. Rohrich's trial counsel had been Douglas B. Robinson of Pullman. Charles Dorn and Brian O'Brien were Rohrich's attorneys on appeal of the original conviction and during the negotiation of a plea agreement on those charges. Br. of Appellant, Ex. C, Agreed Report of Proceedings at 2.

[2] In proceedings below, the parties referred to Rohrich's 1993 conviction as "Rohrich I," the negotiations and plea agreement on the remanded matter as "Rohrich II," and the 1999 molestation charge as "Rohrich III." Because such numbering is frequently used to refer to published decisions with the same title and because, here, there is no published decision regarding the so-called "Rohrich II," we are not adopting those potentially confusing labels in this opinion.

October 20, 2000. The State filed a memorandum in opposition on October 31, 2000, and further pleadings and memoranda were filed "up to the day arguments commenced on December 5, 2000." CP at 176. The State filed supplemental materials on December 18, 2000. Among those materials was Dr. Wilson's December 15, 2000, letter to the prosecutor, in which Dr. Wilson had summarized his contacts with law enforcement:

> As part of my work with the children, I conducted intake interviews with the children. Because the children reported sexual abuse, I contacted law enforcement and Child Protective Services about their disclosures. With their mother's consent, I also recorded some disclosure sessions. A law enforcement officer observed two of the videotaped interviews in September, 1997. In addition, I provided an audiotape and other details of disclosures to law enforcement of further disclosures. *At no time over the last three years, has anyone from your office, CPS [Child Protective Services], or law enforcement requested written records from my office. . . . As you are aware, the videotape that was made in 1997 was requested by law enforcement several days ago.* That tape was provided to law enforcement today after a copy was made for our files.

CP at 173 (emphasis added); *see* CP at 188 (identifying the tape that Dr. Wilson provided on December 15, 2000, as the September 10, 1997, videotape of his interviews with K.V. and A.V.).

In a memorandum opinion dated April 22, 2001, the trial court dismissed the charges under CrR 8.3(b); the order dismissing the cause with prejudice was filed May 8, 2001. The Court of Appeals affirmed the trial court. *State v. Rohrich*, 110 Wn. App. 832, 43 P.3d 32 (2002). This court granted the State's petition for review.

ISSUE

In affirming the trial court's dismissal of the first degree child molestation charge against Rohrich, did the Court of Appeals erroneously conclude that, because the witnesses'

memories could have faded, the State's 18-month delay in filing the charge had deprived Rohrich of a fair trial?

## ANALYSIS

■ ■ *Standard of Review for Dismissals under CrR 8.3(b).* The State contends that the Court of Appeals erred in affirming the trial court's CrR 8.3(b) dismissal of the State's July 1, 1999, child molestation charge against Rohrich. CrR 8.3(b), originally adopted in 1973,[3] was amended in 1995 to include the italicized clause:

> The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution . . . *when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial.* The court shall set forth its reasons in a written order.

The amendment thus narrowed the rule, which had "appear[ed] to grant largely unfettered discretion to the trial court to dismiss a criminal prosecution." 4A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE CrR 8.3, at 487 (6th ed. 2002). The drafters of the amendment correctly noted that prior Washington case law, which had "severely restrict[ed] this discretion," supported the rule change. *Id.*; *see State v. Michielli*, 132 Wn.2d 229, 239, 937 P.2d 587 (1997) (observing that amendment "merely reflects preexisting common law requirements for dismissing charges"). Indeed, this court has long recognized that "[d]ismissal of charges is an extraordinary remedy . . . available only when there has been *prejudice to the rights of the accused which materially affected the rights of the accused to a fair trial.*" *State v. Baker*, 78 Wn.2d 327, 332-33, 474 P.2d 254

---

[3] Superseding RCW 10.46.090, the 1973 rule stated that "[t]he court on its own motion in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution and shall set forth its reasons in a written order." While CrR 8.3(a) and (b) pertain to dismissal upon motions of the prosecution and the court, defendants have initiated such motions. *See State v. Blackwell*, 120 Wn.2d 822, 825, 845 P.2d 1017 (1993). Here, Rohrich raised CrR 8.3(b) in at least three pleadings. The court acknowledged in its memorandum opinion that, "[a]lthough [dismissal under 8.3(b)] was requested by the defendant, such decision [was] made on the court's own motion as is required by the court rule." CP at 197.

(1970) (emphasis added); *City of Seattle v. Orwick*, 113 Wn.2d 823, 830, 784 P.2d 161 (1989) (adopting the language from *Baker*). In light of the prior case law and the 1995 amendment, this court has determined that a trial court may not dismiss charges under CrR 8.3(b) unless the defendant shows by a preponderance of the evidence (1) "arbitrary action or governmental misconduct" and (2) "prejudice affecting the defendant's right to a fair trial." *Michielli*, 132 Wn.2d at 239-40; *see State v. Starrish*, 86 Wn.2d 200, 205, 544 P.2d 1 (1975) (acknowledging "that CrR 8.3(b) is designed to protect against arbitrary action or governmental misconduct").

When reviewing a trial court's dismissal of charges under CrR 8.3(b), appellate courts must ask whether the trial court's conclusion that both elements were satisfied was a "manifest abuse of discretion." *Michielli*, 132 Wn.2d at 240. The reviewing court will find an abuse of discretion "when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons." *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993); *Michielli*, 132 Wn.2d at 240. A decision is based "on untenable grounds" or made "for untenable reasons" if it rests on facts unsupported in the record or was reached by applying the wrong legal standard. *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995). A decision is "manifestly unreasonable" if the court, despite applying the correct legal standard to the supported facts, adopts a view "that no reasonable person would take," *State v. Lewis*, 115 Wn.2d 294, 298-99, 797 P.2d 1141 (1990), and arrives at a decision "outside the range of acceptable choices." *Rundquist*, 79 Wn. App. at 793. However, as we explained in *Michielli*, "[e]ven if the trial court based its dismissal of the charges on . . . inappropriate grounds," thus abusing its discretion, the appellate court may yet "affirm the lower court's judgment on any ground within the pleadings and proof": "If we find Defendant raised and proved sufficient grounds for a CrR 8.3(b) dismissal, we must then affirm the trial court's dismissal of the charges." 132 Wn.2d at 242-43 (citations omitted).

*Proof of Second Element of CrR 8.3(b), "Prejudice Affecting the Defendant's Right to a Fair Trial."* In the present case, the Court of Appeals found no abuse of discretion in the trial court's conclusion that the preaccusatorial delay satisfied the first element of proof under CrR 8.3(b), "governmental misconduct." Assuming, without deciding, that the trial court did not abuse its discretion as to the first prong, we focus our review here on the second required element, "prejudice affecting the defendant's right to a fair trial." *Michielli,* 132 Wn.2d at 240; *cf. Strickland v. Washington,* 466 U.S. 668, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (observing that, as to the two requirements essential to support a claim of ineffective assistance of counsel, deficient performance and prejudice, "[i]f it is easier to dispose of [the] claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed").

Dismissal of charges under CrR 8.3(b) is permissible only when, as a result of the governmental mismanagement, "there has been prejudice to the rights of the accused which materially affect[s] the accused's right to a fair trial." The trial court in the present case concluded that the State's delay in filing the mid-1999 molestation charge had prejudiced Rohrich in several ways, but the Court of Appeals summarized and rejected each of the trial court's determinations, concluding that they had not affected Rohrich's right to a fair trial: in sum, the Court of Appeals held that Rohrich's right to a fair trial had not been prejudiced by Rohrich's "inability to make a joinder request," by "his inability to plea bargain both cases at once," by "the mere possibility that [his] prior conviction could perhaps be used to impeach him," by separate sentencing for the plea-bargained conviction and the new charge, or by the loss of an opportunity to serve but one period of community supervision for the combined convictions. *Rohrich,* 110 Wn. App. at 838-39. The Court of Appeals explained that Rohrich was not entitled to mandatory joinder of charges involving separate victims, that he had no constitutional

right to plea bargain, and that his concerns about advantageous sentencing had no direct bearing on the fairness of the anticipated trial.[4] Thus, the Court of Appeals correctly discerned that the trial court, in analyzing the foregoing concerns, abused its discretion when it concluded that the delayed filing prejudiced Rohrich's right to a fair trial.

However, having rejected the trial court's arguments regarding prejudice, the Court of Appeals then offered the following analysis and conclusion:

> The [trial] court determined this lengthy delay inhibited Mr. Rohrich's ability to prepare a defense. Witnesses' memories could have faded and Mr. Rohrich's own ability to recall the incident could have been compromised. This delay affected Mr. Rohrich's ability to prepare his defense and thus affected his right to a fair trial.
>
> CrR 8.3(b) requires that the defendant's right to a fair trial be affected before a court can dismiss a charge. Many of the reasons the court gave for finding prejudice do not directly affect Mr. Rohrich's right to a fair trial. However, the lengthy delay in filing the charge did inhibit his ability to present a defense, which does affect his right to a fair trial. This is a sufficient tenable basis for the court's decision.

*Id.* at 840. The analysis is problematic. First, the Court of Appeals imputed to the trial court a line of reasoning that simply did not appear in the trial court's memorandum opinion; the trial court had nothing to say about the delay's adverse impact on Rohrich's ability to prepare or present a defense. Although purporting to apply the abuse of discretion standard, the Court of Appeals actually took the tack authorized in *Michielli* and, rejecting the trial court's "inappropriate grounds," based its affirmance on an alternative ground. *Michielli*, 132 Wn.2d at 242. Consequently, the question before this court is whether Rohrich "raised and proved," *id.* at 243, the alternative ground that the Court of Appeals relied upon to affirm the trial court's dismissal: that is, that Rohrich's ability to prepare his

---

[4] *Rohrich*, 110 Wn. App. at 838-39. Rohrich did not request review of these issues in his answer to the State's petition for review. *See* RAP 13.4(d), 13.7(b).

defense was inhibited because the "[w]itnesses' memories could have faded and Mr. Rohrich's own ability to recall the incident could have been compromised." *Rohrich*, 110 Wn. App. at 840.

A second problem in the court's conclusion is its assumption that Rohrich was not obliged to show actual prejudice to meet the CrR 8.3(b) requirement, but could satisfy the requirement by showing speculative prejudice to his right to a fair trial. The Court of Appeals stated that Rohrich had established prejudicial delay because the memories of witnesses *"could have* faded" or because Rohrich's power of recollection *"could have* been compromised." *Rohrich*, 110 Wn. App. at 840 (emphasis added). Prior cases considering whether preaccusatorial delay violated a defendant's due process rights provide cogent support for requiring a showing of actual prejudice for purposes of a CrR 8.3(b) dismissal. In *State v. Norby*, 122 Wn.2d 258, 858 P.2d 210 (1993), we held that "[t]he mere *possibility* of prejudice is not sufficient to meet the burden of showing actual prejudice." *Id.* at 264 (citing *State v. Ansell*, 36 Wn. App. 492, 498-99, 675 P.2d 614 (holding that "[t]he possibility that memories will dim is not in itself enough to demonstrate [the defendant] could not receive a fair trial"), *review denied*, 101 Wn.2d 1006 (1984)). We explicitly stated in *Norby* that "[a] mere allegation that witnesses are unavailable or that memories have dimmed is insufficient." 122 Wn.2d at 264; *State v. Bernson*, 40 Wn. App. 729, 735, 700 P.2d 758 (asserting that "[t]he possibility that memories will fade is not in itself sufficient to demonstrate prejudice") (citing *Ansell*, 36 Wn. App. at 499), *review denied*, 104 Wn.2d 1016 (1985)). Indeed, it would seem incongruous, on the one hand, to permit a trial court to find "simple governmental mismanagement," *Michielli*, 132 Wn.2d at 243, and dismiss the State's charges with prejudice on speculative prejudice alone when, on the other hand, a defendant seeking reversal and a new trial for prosecutorial misconduct must establish not only the misconduct but also the "substantial likelihood" that the mis-

conduct had a prejudicial effect on the jury. *State v. Pirtle*, 127 Wn.2d 628, 672, 904 P.2d 245 (1995). That dismissal under CrR 8.3(b) is an "extraordinary remedy" likewise argues against allowing dismissal based on speculative prejudice to the accused's right to a fair trial. *Baker*, 78 Wn.2d at 332; *Orwick*, 113 Wn.2d at 830. We thus conclude that dismissal under CrR 8.3(b) for government misconduct or arbitrary action resulting in a delay in charging requires a showing of actual prejudice.

The question before us, then, is whether Rohrich "raised and proved," *Michielli*, 132 Wn.2d at 243, the alternative ground that the Court of Appeals suggested—that the State's delay in filing the mid-1999 molestation charge deprived Rohrich of a fair trial because the witnesses' memories, as well as his own, had faded. The record does not show that Rohrich made such an argument, and in the trial court's memorandum opinion, the only comment about the witnesses' credibility is the speculation that Rohrich's cross-examination of the witnesses could now be *more* effective:

> The defendant was convicted . . . in 1993 on substantial evidence. Defense counsel had no way to attack the credibility of the child witnesses. The present debate occurs under far different circumstances. The five girls who denied that the V. girls were involved as victims in any way have dramatically changed their stories. This allows a direct attack on the creditability [sic] of each. They are all teenagers and better subject to cross-examination than the little girls they were in 1993.

CP at 192-93. Moreover, the legislature's enactment of a statute of limitations for the criminal charge at issue here likewise suggests that the simple passage of time (here, 18 months) has not fatally compromised the testimony of the witnesses.[5] Under RCW 9A.04.080(1)(c), the statute of limitations for Rohrich's alleged molestation of K.V. extends

---

[5] " 'Appellees rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment.' "

to March 10, 2006, three years after her 18th birthday. CP at 111; Suppl. Br. of Pet'r at 6. Implicit in the statute is the presumption that witnesses' recollections would not be stale before the victim's 21st birthday. The credibility of the witnesses' testimony should not be predetermined by the trial or appellate court but should reasonably remain a matter for the trier of fact. Absent a showing that the witnesses' memories have actually been compromised by some extraordinary circumstance occurring during the 18-month delay in filing the charge, Rohrich cannot establish that the government's delay prejudiced his right to a fair trial.

## CONCLUSION

We reverse the Court of Appeals and reinstate the first degree child molestation charge filed in mid-1999 against Rohrich. The Court of Appeals erred when it upheld the trial court's dismissal on the alternative basis that, because the witnesses' memories could have dimmed, the delay was prejudicial. Mere speculation regarding a witness's reliability is inadequate to satisfy the CrR 8.3(b) requirement of prejudice to the defendant's right to a fair trial.

ALEXANDER, C.J., and JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, CHAMBERS, and FAIRHURST, JJ., concur.

---

Ansell, 36 Wn. App. at 498 (quoting United States v. Marion, 404 U.S. 307, 325-26, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971)).