# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70721-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL V. TOVAR, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: February 9, 2015 |
| | ) | |

VERELLEN, A.C.J. — Michael Tovar appeals from an order denying his motion for postconviction deoxyribonucleic acid (DNA) testing. Tovar seeks DNA testing of biological samples in the rape kit from his 2010 second degree rape conviction. He contends that the victim's credibility would be impeached through a favorable DNA test and would raise a reasonable probability of his innocence. But unlike postconviction DNA testing cases where a successful DNA test may establish that another person was the perpetrator, the narrow purpose of the proposed DNA testing here is to demonstrate only that the victim lied about being in a monogamous relationship with Tovar. A favorable DNA test on this collateral matter would not raise a reasonable probability of Tovar's innocence. Accordingly, we affirm.

FACTS

In 2010, a jury convicted Tovar of second degree rape while armed with a deadly weapon. Tovar appealed his conviction, and we affirmed in an unpublished opinion.[1] Tovar later filed a motion under RCW 10.73.170 for postconviction DNA testing of evidence collected in a rape kit. Tovar's supporting documentation showed that the rape kit contains biological samples taken from the victim, A.P., that a Washington State Patrol Crime Laboratory report identified an unknown individual's spermatozoon on an oral swab in the rape kit, that a male DNA-typing profile could be obtained with a particular typing analysis, and that Tovar's vasectomy in 2000 resulted in his inability to ejaculate sperm.

Tovar argued that a favorable DNA result would demonstrate that A.P. lied when she testified that she was monogamous with Tovar. For example, defense counsel argued at the hearing that the DNA test results "would go to [A.P.'s] credibility" because "she testified she was in a monogamous relationship with Mr. Tovar for approximately a month,"[2] that Tovar is "not attempting to identify another perpetrator of the crime, but trying to establish that [A.P.] was in fact lying on the stand,"[3] that "the primary issue at trial was the credibility of [A.P.] and this directly relates to her credibility when she states that she was only having a relationship with Mr. Tovar,"[4] and that the DNA test results

---

[1] State v. Tovar, noted at 166 Wn. App. 1021 (2012).

[2] Report of Proceedings (RP) (July 25, 2013) at 4.

[3] Id. at 5.

[4] Id. at 6.

"would go to her demeanor as she testified on the stand attempting to prove that she was in some sort of monogamous relationship with [Tovar] for that month period."[5]

The trial court assumed the procedural requirements had been satisfied, but concluded that favorable DNA testing would not demonstrate Tovar's innocence on a more probable than not basis. In denying the motion, the court considered A.P.'s testimony, Tovar's phone conversation apologizing to A.P. for his actions, Tovar's flight from police officers, Tovar's attempt to inflict self-injury and commit suicide when police officers pursued him, Tovar's defense of consent or excuse for his conduct, and "all of the evidence in this case."[6]

Tovar appeals.

## ANALYSIS

We review a trial court's decision on a motion for postconviction DNA testing for abuse of discretion.[7] A trial court abuses its discretion when it bases its decision on untenable or unreasonable grounds.[8] "A decision is based on untenable [or unreasonable] grounds . . . if it rests on facts unsupported in the record or was reached by applying the wrong legal standard."[9]

Tovar challenges the trial court's denial of his motion for postconviction DNA testing. Because A.P. testified that she was monogamous with Tovar, he contends that

---

[5] Id. at 7.

[6] Id. at 7-8.

[7] State v. Thompson, 173 Wn.2d 865, 870, 271 P.3d 204 (2012).

[8] State v. Magers, 164 Wn.2d 174, 181, 189 P.3d 126 (2008).

[9] State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (internal quotation marks omitted).

one additional piece of evidence impeaching A.P.'s credibility via a favorable DNA test would raise a reasonable probability of his innocence. We disagree.

"RCW 10.73.170 provides a mechanism . . . for individuals to seek DNA testing in order to establish their innocence."[10] The statute's substantive standard provides that [t]he court shall grant a motion requesting DNA testing under this section if . . . the convicted person has shown the likelihood that the DNA evidence would demonstrate innocence on a more probable than not basis."[11] When determining if it is likely the DNA evidence would demonstrate innocence, "a court should presume DNA evidence would be favorable to the convicted person."[12] A trial court must look to whether a favorable DNA test, including all the other evidence from the trial, demonstrates the individual's innocence on a more probable than not basis.[13]

Here, as expressed in Tovar's motion argued to the trial court, the purpose of the proposed DNA testing was to challenge A.P.'s testimony that she was monogamous with Tovar. Tovar did not contend that an alternative purpose of the DNA test would demonstrate that he had no sexual contact with A.P. on the night of the rape. The prosecutor argued at the hearing that "the defense is consent, and the sex is not contested."[14] The trial judge agreed, stating, "[T]he State is accurate that [Tovar's]

---

[10] State v. Crumpton, 181 Wn.2d 252, 258, 332 P.3d 448 (2014).

[11] RCW 10.73.170(3).

[12] Crumpton, 181 Wn.2d at 255.

[13] Id. at 262, 264; State v. Gray, 151 Wn. App. 762, 774, 215 P.3d 961 (2009) ("'The statute requires a trial court to grant a motion for postconviction testing when exculpatory results would, in combination with the other evidence, raise a reasonable probability the petitioner was not the perpetrator.'" (alteration omitted) (quoting State v. Riofta, 166 Wn.2d 358, 367-68, 209 P.3d 467 (2009))).

[14] RP (July 25, 2013) at 6.

4

defense was not that the events did not occur, but that there was some basis for consent or excusing the conduct of Mr. Tovar."[15]

For the first time on appeal, Tovar contends that a DNA test would serve the alternative purpose of proving that A.P. lied when she testified she had sexual contact with Tovar on the night of the rape. But this contention may not be raised for the first time on appeal. The purpose of the proposed DNA testing was to challenge A.P.'s testimony that she was monogamous with Tovar. Thus, the presumption is merely that A.P. lied about being monogamous at the time of the rape.

Tovar contends that the trial court failed to apply the proper standard when deciding his motion for postconviction DNA testing. We disagree. The trial court concluded that "even if it were shown that [A.P.] lied about having sex with another individual other than Mr. Tovar," along with "all of the evidence in this case," Tovar had not shown the likelihood that the DNA test would raise a reasonable probability of innocence.[16] Because the trial court evaluated the likelihood of innocence based on a favorable DNA test and because its analysis considered all of the evidence from the trial, we conclude that the trial court applied the proper standard under RCW 10.73.170.

In addition, "all the evidence against the individual" must be analyzed when deciding a DNA testing motion.[17] Here, physical evidence corroborated A.P.'s version of the events. A detective and emergency room physician observed A.P.'s injuries to the inside of her mouth, and police recovered a pillow with a puncture mark. At trial, Tovar challenged the accuracy of several factual details in A.P.'s testimony. Tovar fails

---

[15] Id. at 8.

[16] Id. at 7-8.

[17] Crumpton, 181 Wn.2d at 262.

5

to demonstrate that one additional piece of evidence —that A.P. lied about being monogamous with Tovar—would establish his innocence on a more probable than not basis.

Additionally, Tovar's reliance on State v. Crumpton is unpersuasive.[18] There, despite overwhelming evidence of the defendant's guilt on five counts of first degree rape and one count of residential burglary, the Supreme Court held that the defendant's motion for DNA testing must be granted.[19] Because the perpetrator's identity was at issue, "[a]ny DNA evidence left on the items [the defendant] petitioned to test would almost certainly have been left by the perpetrator of the rape."[20] The defendant also denied hitting or raping the victim.[21] Therefore, "[e]xculpatory results of DNA testing . . . would certainly affect the likelihood [the defendant] was innocent."[22]

By contrast, Tovar's defense at trial was consensual sex or excuse. The rape kit could contain the DNA of any number of A.P.'s other sexual partners besides Tovar, but that does not mean that person was the rapist.[23] As Tovar argues, the presence of another's DNA would serve only to undermine A.P.'s credibility that she was

---

[18] 181 Wn.2d 252, 332 P.3d 448 (2014).

[19] Id. at 261.

[20] Id. Unlike here, the victim in Crumpton "was unable to give a good description of the rapist due to the dark room and her head being covered during the encounter." Id. at 255-56.

[21] Id. at 257.

[22] Id. at 261.

[23] See Riofta, 166 Wn.2d at 370-71 (arguing that because "[a]ny number of people besides the [perpetrator] could have worn the white hat at some time after the vehicle was stolen[,] . . . the presence of another's DNA on the hat does not mean that person likely was wearing the hat at the time of the shooting").

monogamous with Tovar, not exclude him as the perpetrator.

Because Tovar seeks to use DNA evidence to prove A.P. lied about being monogamous, a favorable DNA test would add little to determining Tovar's innocence "on a more probable than not basis."[24] Therefore, Tovar fails to demonstrate that the trial court abused its discretion in denying his motion for postconviction DNA testing.

We affirm.

WE CONCUR:

---

[24] RCW 10.73.170(3).