# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49584-8-II |
| Appellant, | |
| v. | |
| MARK THOMAS HENSLEY, | UNPUBLISHED OPINION |
| Respondent. | |

MAXA, C.J. – The State appeals the trial court's CrR 8.3(b) dismissal of felony harassment and felony harassment–death threats charges against Mark Hensley. Hensley moved to dismiss the charges after he received a police department internal affairs investigation file associated with the charges on the first day of trial.

We hold that (1) the trial court erred by failing to hold a hearing to explore the basis of dismissal as required under CrR 8.3(b); (2) the trial court erred by failing to state the reasons for dismissal in a written order as required under CrR 8.3(b); and (3) on this record, we cannot determine whether the trial court's dismissal was appropriate. Accordingly, we vacate the trial court's order dismissing the charges against Hensley and remand for further proceedings.

## FACTS

*Incident*

On June 4, 2015, Hensley made multiple calls to a recorded 911 emergency line. In one call, Hensley made threats against the lives of two tenants at a residence he owned in Ridgefield.

In a second call, Hensley made statements referencing Roy Rhine, a Ridgefield police officer. Hensley stated that he had friends that would put a bullet in Rhine and that if Rhine kept "sending your boys after me, one of [us] is going to wind up dead." Clerk's Papers (CP) at 3.

Three days before these events, Officer Rhine had a telephone conversation with Charles Bender, Hensley's therapist. According to Rhine, Bender described Hensley as a "very dangerous person." 3 Report of Proceedings (RP) at 352. Rhine later summarized the contents of this call in a letter dated June 20, 2016 that he prepared in conjunction with an internal affairs investigation by the Ridgefield Police Department.

The State charged Hensley with one count of felony harassment involving a threat to a criminal justice system participant (Rhine) and two counts of felony harassment–death threats involving the two other people. The State later amended the information to remove one of the harassment counts alleging death threats.

*Pretrial Proceedings*

At a hearing on September 1, 2016, Hensley moved to continue the scheduled trial based on new information he had received. Hensley stated that the State had informed him that the Ridgefield Police Department had conducted an internal affairs investigation regarding Hensley's threats. The State clarified that it did not know what was in the internal investigation file, and so could not say whether the file contained additional relevant information or if that information would be inculpatory or exculpatory.

Hensley stated that he was not prepared to go to trial and would need to investigate the additional information. The trial court granted a continuance until October 3. Hensley moved forward with the trial on October 3 even though he had not yet received the internal affairs investigation file.

*Motions to Dismiss*

On the first day of trial, Hensley moved to dismiss the charges because of alleged discovery abuses by the State. Hensley stated that the previous Friday he had received from the State a recording of a 911 call he had made a week before the call referenced in the State's charge. Hensley stated that he had specifically requested material like the recording, but the State had failed to include it in its discovery materials.

The State responded that it had provided a police file to Hensley concerning the earlier call, but it had not previously obtained the recording. Officer Rhine provided a recording of the 911 call to the State on Friday and the State immediately forwarded the recording to Hensley. The trial court denied the motion to dismiss but excluded the recording from evidence.

At the beginning of the second day of trial, Hensley again moved to dismiss the charges. Hensley's counsel acknowledged that the State did not have notice of his motion. He explained that he had received the file relating to the Ridgefield Police Department's internal affairs investigation just the day before.[1] Included in the file was the June 2016 letter that Rhine had prepared regarding his conversation with Bender. The letter stated that Bender had described Hensley as a "very dangerous person." 3 RP at 352. The letter also stated that Rhine had spoken with the prosecutor's office about the contents of the conversation.

Hensley's counsel contacted Bender before coming to court that day, and counsel told the court that Bender stated that the language used in Rhine's letter was a "[c]omplete distortion." 3 RP at 352. Counsel relayed that Bender's specific concern in talking with Rhine was that Hensley would be in danger because he did not back down from authority. Counsel further

---

[1] The record is unclear who provided the file to Hensley's counsel.

stated that there had been no prior discovery indicating contact between Rhine and the prosecutor's office, and that had there been he would have interviewed additional people.

Hensley did not make the basis of his motion to dismiss particularly clear. Counsel did not appear to be objecting to receiving the internal affairs investigation file on the first day of trial. And he clarified that Rhine's letter itself was not *Brady*[2] material and did not contain *Brady* material. Instead, counsel appeared to argue that once the State became aware that Rhine had talked to Bender three days before the alleged threats, the State had an affirmative duty to investigate the details of that conversation and disclose those details to Hensley. Specifically, he argued that his investigation disclosed *Brady* material, apparently in reference to Bender's disagreement with Rhine's version of the conversation.

In response, the State noted that Rhine had disclosed in a December 2015 interview (apparently involving defense counsel) that he had a conversation in which one of Hensley's mental health practitioners stated that Hensley had become extremely dangerous. In a second interview on September 26, 2016, Rhine discussed the conversations he had with Hensley's doctors. After that interview, Hensley worked with the Ridgefield Police Department to obtain the internal affairs file. The State emphasized that even though Hensley had not yet received additional materials, he had made a decision to call the case as ready rather than moving for a good cause continuance.

Hensley's counsel stated that he knew that Rhine had contacted Bender based on the September 26 interview, but that from that interview counsel believed Rhine's communication with Bender occurred *after* the alleged crime. And in the December 2015 interview Rhine did not mention a time frame for the conversation with one of Hensley's mental health practitioners.

---

[2] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

It was not until a third interview on the night after the first day of trial that Rhine clarified that his conversation with Bender had occurred three days before the alleged threats. Only then did Hensley's counsel realize that he had to contact Bender, which led him to discover a substantial difference between Rhine's version and Bender's version of the conversation.

The trial court did not conduct an evidentiary hearing or require the parties to submit declarations under oath or exhibits regarding the facts underlying the motion. As a result, the trial court record does not contain Rhine's June 2016 letter, any other portions of the internal affairs investigation file, evidence regarding when the investigation file became available, or any sworn testimony from Rhine or Bender. The State pointed out to the trial court that Hensley had not submitted an affidavit or testimony from Bender, and that Rhine may have a different version of the events than Bender. The State also made a relevance argument: "I think we're getting into a completely separate issue from the facts of this case. I was never intending to get into any of this with Lieutenant Rhine." 3 RP at 358.

*Trial Court Ruling*

The trial court entered an oral ruling dismissing the charges against Hensley under CrR 8.3. The court stated, "I do not find that there was any kind of evil intentional wrongdoing, act by the State." 3 RP at 367. However, the court stated, "I believe this is prejudicial to Mr. Hensley getting this material that should have been provided sooner. It is prejudicial to him, prejudicial in the possibility of the defense that he's able to put forward." 3 RP at 367. The result was "denying [Hensley] the right to have further investigation." 3 RP at 367.

The court concluded that although Hensley previously had stated he was prepared to go to trial, the State's failure to provide information in a timely manner was grounds to dismiss the charges:

Yes, they made the decision to call the case ready for trial, but there are cases that talk about when they get stuck in that position of waiving speedy trial rights versus doing that further investigation, it's not a fair place to put the defendant in to make those choices and options.

This case was called ready. We're now in the middle of trial. This coming up last night – kind of the nexus of it coming up last night at a follow-up interview – this could have been provided before. I believe it should have been provided before.

We've been talking about all this information throughout this case of wanting to get all the reports and contacts and information. Coming in mid-trial is not acceptable. I think the cumulati[ve] effect of both yesterday's [motion to dismiss that] I denied and this one – but this is probably enough standing alone, but the cumulative effect, I'm dismissing this matter.

3 RP at 367-68.

The trial court did not expressly identify what information the State failed to disclose that resulted in the dismissal. The court referred to "this late of getting the materials," 3 RP at 365, "this material," 3 RP at 367, and "this information, this letter," 3 RP at 367, without being more specific. The court also did not expressly rule that the State had committed a *Brady* violation, although the court did mention "*Brady* material." 3 RP at 367.

After the trial court's oral ruling, the State raised three more points: there had been no testimony from Bender and only paraphrasing by Hensley, the internal affairs file and Rhine's letter were not in evidence, and the State provided the relevant evidence in the September 26 interview and in prior discovery. The court noted these points without comment.

The trial court entered a memorandum of disposition, stating that it granted Hensley's motion to dismiss without prejudice under CrR 8.3. The court did not enter written findings of fact or conclusions of law or otherwise explain its reasons for dismissal in a written order.

The State appeals the trial court's dismissal of the charges against Hensley.

6

ANALYSIS

A.    LEGAL BACKGROUND

CrR 8.3(b) provides the trial court with authority to dismiss a criminal prosecution based

on government misconduct:

> The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial.  The court shall set forth its reasons in a written order.

To justify dismissal under CrR 8.3(b), the defendant must show that (1) arbitrary action or

governmental misconduct occurred and (2) the misconduct caused prejudice affecting the

defendant's right to a fair trial.  *State v. Barry*, 184 Wn. App. 790, 797, 339 P.3d 200 (2014).

To show government misconduct, the defendant need not show that the State acted

dishonestly or in bad faith.  *State v. Kone*, 165 Wn. App. 420, 433, 266 P.3d 916 (2011).  Simple

mismanagement is enough.  *Id.*  Government misconduct can include a violation of CrR 4.7

discovery rules.  *State v. Brooks*, 149 Wn. App. 373, 382-83, 203 P.3d 397 (2009).  *Brady*

violations are also a possible basis for dismissal under CrR 8.3(b).  *See State v. Martinez*, 121

Wn. App. 21, 32-34, 86 P.3d 1210 (2004) (affirming dismissal for State's prejudicial failure to

provide evidence in a timely manner).

To show prejudice as required under CrR 8.3(b), a defendant must do more than

generally allege prejudice to his fair trial rights or show a mere possibility of prejudice.  *State v.*

*Rohrich*, 149 Wn.2d 647, 657, 71 P.3d 638 (2003); *see State v. Salgado-Mendoza*, 189 Wn.2d

420, 432, 403 P.3d 45 (2017) (addressing CrRLJ 8.3(b)).  The defendant must show actual

prejudice.  *Rohrich*, 149 Wn.2d at 657.  As the rule states, dismissal is appropriate only when the

government's misconduct prejudices the rights of the defendant in a manner that materially

affects his or her right to a fair trial.  CrR 8.3(b); *State v. Garza*, 99 Wn. App. 291, 295, 994 P.2d

868 (2000). And dismissal is not proper when suppressing the evidence will eliminate any prejudice. *Garza*, 99 Wn. App. at 295.

One way to show actual prejudice is by showing that the State made a late disclosure of material facts. *Salgado-Mendoza*, 189 Wn.2d at 432. A delayed disclosure that presents "new facts" may actually prejudice the defendant by forcing him to choose between his right to a speedy trial and his right to representation by an adequately prepared attorney. *Id.*

Dismissal under CrR 8.3(b) is an extraordinary remedy that should be limited to egregious cases of mismanagement or misconduct. *State v. Wilson*, 149 Wn.2d 1, 9, 65 P.3d 657 (2003). A trial court should consider intermediate remedial steps such as exclusion of evidence before ordering this extraordinary remedy. *Id.* at 12. And a trial court should dismiss charges under CrR 8.3(b) only as a last resort. *Id.*

We review a trial court's dismissal ruling under CrR 8.3(b) for an abuse of discretion. *Rohrich*, 149 Wn.2d at 654. However, the trial court's discretion must be exercised in light of fact that dismissal is an extraordinary remedy. *See id.* at 653-54. The trial court abuses its discretion by making a decision that is manifestly unreasonable, based on untenable grounds, or made for untenable reasons. *Id.* at 654. A decision is manifestly unreasonable if the trial court adopts a view that no reasonable person would take. *Id.* A decision is based on untenable grounds if it is based on facts that are unsupported in the record. *Id.*

B.      CrR 8.3(b) PROCEDURAL REQUIREMENTS

The State argues that the trial court erred by failing to hold an evidentiary hearing or to set forth the reasons for its dismissal in writing. We agree.[3]

---

[3] The State also argues that the trial court erred in ruling on CrR 8.3(b) when the State did not have notice of Hensley's motion. However, as Hensley points out, the State did not object in the trial court and therefore cannot raise the issue for the first time on appeal under RAP 2.5(a).

1. Hearing on Dismissal

CrR 8.3(b) states that the court may dismiss a criminal prosecution "after notice and hearing." The rule does not explain what type of hearing is required and does not expressly require an evidentiary hearing. And no cases have directly addressed the hearing requirement.

We need not determine the exact nature of the hearing that CrR 8.3 (b) requires because there is no question here that the trial court's procedure on the motion was inadequate. The trial court simply heard argument from counsel without requiring either party to submit documentary evidence or testimony, or even a formal offer of proof, regarding the issues relevant to a CrR 8.3(b) dismissal. For example, neither Rhine's letter nor the internal affairs investigation file is in the record. The record does not disclose when the investigation file was available or what steps either the State or Hensley took to obtain the investigation file once they learned that it existed. There is no testimony from either Rhine or Bender regarding their interaction, which apparently was the primary basis of Hensley's motion. And there may be other evidence that was relevant or necessary to fully evaluate whether dismissal is the appropriate remedy.

We hold that the trial court violated CrR 8.3(b) by failing to hold a hearing that was adequate to provide a record sufficient to support the court's dismissal order.

2. Written Reasoning for Dismissal

CrR 8.3(b) states that the court "shall set forth its reasons [for dismissal] in a written order." Here, the court violated CrR 8.3(b) by failing to enter a written order explaining its reasons for dismissal.

If the trial court fails to reduce its reasoning to writing, we may look to the trial court's oral ruling. *Wilson*, 149 Wn.2d at 9 n.5. Therefore, remand is improper if done solely for the

purpose of adding written reasoning when the trial court's reasoning is evident from its oral ruling. *Id.*

However, the trial court's oral ruling did not provide enough detail to allow for appellate review. The court found government misconduct, stating that the delay in getting materials to Hensley caused prejudice. But the court's oral ruling did not specifically identify what information the State failed to disclose. The court referred to "this late of getting the materials," 3 RP at 365, "this material," 3 RP at 367, and "this information, this letter," 3 RP at 367, without being more specific. In addition, the court did not specifically identify whether the State's misconduct involved a violation of its CrR 4.7 discovery obligations, its obligations under *Brady*, or some other requirements.

Similarly, the trial court stated in its oral ruling that the prejudice from the State's misconduct was in denying Hensley "the right to have further investigation." RP at 367. But the court did not explain how the materials in the investigation file or any related investigation would be material to the charges against Hensley. And the court did not make an express oral finding that the State's misconduct materially affected Hensley's right to a fair trial, which is a prerequisite to dismissal under CrR 8.3(b). Finally, the court did not address whether intermediate remedial steps such as exclusion of evidence could have remedied any prejudice.

We hold that the trial court erred by failing to provide its reasoning in writing as required under CrR 8.3(b), and that the trial court's oral ruling is not sufficient for us to review the court's dismissal order.

C.    INSUFFICIENCY OF RECORD

As discussed above, the trial court failed to conduct an adequate hearing or even require the submission of evidence or an offer of proof in support of Hensley's motion to dismiss under

10

CrR 8.3(d). Further, the trial court did not provide a written order setting forth the reasons for dismissal as required under CrR 8.3(b), and the court's oral ruling is not sufficient for us to review its decision.

As a result, the record simply is insufficient to determine if the extraordinary remedy of dismissal was appropriate under CrR 8.3(b). There is no evidence in the record that would allow us to evaluate whether the State engaged in egregious misconduct or whether there was prejudice to Hensley's rights that materially affected his right to a fair trial. Further, we cannot determine whether intermediate remedial steps such as exclusion of evidence could have remedied any prejudice.

## CONCLUSION

We vacate the trial court's order dismissing the charges against Hensley and remand for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, C.J.

We concur:

LEE, J.

MELNICK, J.