## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58347-0-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| PIO AUGUSTINO FAGAAUTAU, | |
| Appellant. | |

CHE, J. — Pio Agustino Fagaautau appeals the trial court's decision denying his motion for post-conviction DNA testing under RCW 10.73.170.

Years after a jury found Fagaautau guilty of two counts of second degree child rape, Fagaautau moved for post-conviction DNA testing. He argued that advanced technology could more likely than not establish his actual innocence and his motion should be granted pursuant to his constitutional rights. However, Fagaautau did not identify any items to be tested. The trial court denied his motion based on both procedural and substantive grounds.

On appeal, Fagaautau argues that the trial court abused its discretion in denying his motion. Fagaautau contends that his motion met the statutory requirements and that the trial court applied the wrong legal standard by failing to presume the motion results to be favorable to him.

We hold that the trial court did not abuse its discretion by denying Fagaautau's motion for post-conviction DNA testing. Accordingly, we affirm.

## FACTS

### BACKGROUND

In June 2019, a jury convicted Fagaautau of two counts of second degree child rape involving Fagaautau's cousin, MAG.[1]

Fagaautau was close with MAG's family and he stayed with them for a while when MAG was 10 years old. At trial, MAG testified that in 2015 when she was 12 years old, Fagaautau inserted his fingers into her vagina and then placed his penis into her vagina while at Fagaautau's sister's house.[2] MAG disclosed the incident to her mother three years after it occurred.

Two law enforcement officers testified that they did not collect any physical evidence from the residence where the rapes occurred or from MAG such as clothing and samples. The officers explained that, three years after the rape, there would not have been any evidence that could be attributed to a single source of DNA or to the specific crime. Fagaautau was at the house regularly where the incident occurred, so his DNA could have been left from other instances. Furthermore, the officers believed that any rape kit samples from MAG would not be helpful forensically due to the three-year delay in reporting.

The trial court admitted no exhibits. After the jury found Fagaautau guilty, the trial court determined his two convictions were the same criminal conduct and sentenced Fagaautau in September 2019.

---

[1] At the time of the incident, MAG was at least 12 years old but less than 14 years old and was not married to Fagaautau, who was at least 36 months older than MAG.

[2] Fagaautau lived at his sister's house during the time of the rape.

No. 58347-0-II

In October 2019, Fagaautau appealed his judgment and sentence to this court, raising multiple issues unrelated to those raised here. We affirmed his convictions and, in April 2022, issued a mandate terminating his direct appeal.

RCW 10.73.170 MOTION FOR POST-CONVICTION DNA TESTING

In February 2023, Fagaautau filed a self-represented motion requesting DNA testing "of any and all material" pursuant to RCW 10.73.170. Clerk's Papers (CP) at 51. Fagaautau contended that "advanced technology analyses regarding DNA testing could more likely than not establish his actual innocence." CP at 52. In support of his request, Fagaautau cited to *Brady v. Maryland* to claim his right to disclosure of exculpatory evidence.[3] Fagaautau also asked the court to grant his motion pursuant to "his Sixth Amendment right to present a defense and his Fourteenth Amendment right to equal protection of the law." CP at 53.

At the motion's hearing, Fagaautau argued, "[e]vidence that should've been preserved by law enforcement or any cooperating law enforcement agency has either exculpatorial . . . or inexculpatorial . . . potential and that evidence should be discoverable after conviction." 1 Rep. of Proc. (RP) (Apr. 27, 2023) at 5. Fagaautau did not identify any evidence to be tested either in his written motion or at the motion's hearing.

The trial court found that neither DNA testing was previously done nor DNA evidence was presented, taken, or available due to the three-year delay in reporting. The trial court concluded that Fagaautau "failed to [explain] why DNA evidence is material to the identity of the perpetrator of, or accomplice to, the crime, or to sentence enhancement." CP at 61. Additionally, it concluded that Fagaautau failed to "show any likelihood that DNA evidence

---

[3] 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

would demonstrate innocence on a more probable than not basis." CP at 62. The trial court denied Fagaautau's motion because it did not satisfy the statutory requirements on both procedural and substantive grounds.

Fagaautau appeals.

ANALYSIS

Fagaautau contends that the trial court abused its discretion in denying his motion for post-conviction DNA testing. He claims that his motion met the statutory requirements and that the trial court applied the wrong legal standard by failing to presume that the motion would be favorable to him.[4] We disagree.

A.      *Legal Principles*

We review a trial court's decision on a motion for post-conviction DNA testing for an abuse of discretion. *State v. Riofta*, 166 Wn.2d 358, 370, 209 P.3d 467 (2009). A trial court abuses its discretion when "an order is manifestly unreasonable or based on untenable grounds." *State v. Thompson*, 173 Wn.2d 865, 870, 271 P.3d 204 (2012) (citing *State v. Rafay*, 167 Wn.2d 644, 655, 222 P.3d 86 (2009)). "A discretionary decision is based 'on untenable grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." *Id.* (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

---

[4] Fagaautau also appears to contend that the trial court's denial of his motion violated his due process right to the disclosure of all exculpatory evidence under the Fifth and Fourteenth Amendments and *Brady v. Maryland*. To the extent Fagaautau asserts a constitutional violation regarding access to exculpatory evidence before or during trial, such a claim is not properly before us from a denial of a motion for post-conviction DNA testing and we decline to address it. RAP 2.4(a).

4

A person convicted of a felony who is currently serving a term of imprisonment may move for post-conviction DNA testing. RCW 10.73.170(1). The statutory requirements provide:

> (2) The motion shall:
> (a) State that:
> (i) The court ruled that DNA testing did not meet acceptable scientific standards; or
> (ii) DNA testing technology was not sufficiently developed to test the DNA evidence in the case; or
> (iii) The DNA testing now requested would be significantly more accurate than prior DNA testing or would provide significant new information;
> (b) Explain why DNA evidence is material to the identity of the perpetrator of, or accomplice to, the crime, or to sentence enhancement; and
> (c) Comply with all other procedural requirements established by court rule.
> (3) The court shall grant a motion requesting DNA testing under this section if such motion is in the form required by subsection (2) of this section, and the convicted person has shown the likelihood that the DNA evidence would demonstrate innocence on a more probable than not basis.

RCW 10.73.170(2)-(3). The statute provides a mechanism to permit the potential exoneration of a wrongfully convicted defendant. *State v. Crumpton*, 181 Wn.2d 252, 258, 332 P.3d 448 (2014).

To access post-conviction DNA testing under RCW 10.73.170, a movant must meet both the statute's procedural and substantive requirements. *Riofta*, 166 Wn.2d at 364. The procedural requirements, RCW 10.73.170(2)(a)-(c), are lenient and met when the motion states the basis for the request, explains the relevance of the DNA evidence sought, and complies with the applicable court rules. *Id.* at 364, 367. The substantive requirement, RCW 10.73.170(3), is onerous but reasonable and met when the petitioner shows the "likelihood that the DNA evidence would demonstrate innocence on a more probable than not basis." *Id.* at 367; *Crumpton*, 181 Wn.2d at 262.

B.      *Fagaautau Fails to Meet RCW 10.73.170's Procedural and Substantive Requirements*

Beginning with the procedural requirements, Fagaautau contends the trial court's reasoning, that he failed to explain why DNA evidence was material to the identity of the perpetrator of the crime as required under RCW 10.73.170(2)(b), failed logically because his conviction lacked reliable identification or tangible evidence. We disagree.

Fagaautau's motion stated that "advanced technology analyses regarding DNA testing could more likely than not establish his actual innocence," appearing to invoke RCW 10.73.170(2)(a)(ii) and (iii). CP at 52. But without any items with DNA evidence collected and presented at trial, or new evidence identified to be tested, whether advanced technology could be used to establish innocence is irrelevant. *See Riofta* at 166 Wn.2d at 362, 366 (a movant may request testing of new evidence that the original fact finder did not consider at trial).

Because Fagaautau did not even identify what he sought to have tested, he failed to explain how technological advancement would apply to any evidence or how DNA testing would provide significantly new information. By merely relying on a vague assertion that some technological advancements would apply to unidentified evidence, Fagaautau's motion did not meet RCW 10.73.170(2)(a)'s procedural requirement.

Next, Fagaautau failed to meet the procedural requirement under RCW 10.73.170(2)(b)—explain why DNA evidence is material to the identity of the perpetrator. Neither in Fagaautau's written motion nor during the motion hearing, did Fagaautau explain why DNA evidence would be relevant to the identity of the perpetrator. The trial court found after the

motion hearing that no DNA evidence was presented, taken, or available.[5]  In the absence of any

DNA evidence identified to be tested and Faggautau's lack of explanation why it would be

material to the identity of the perpetrator, the trial court could not evaluate the relevance of DNA

evidence to the identity of the perpetrator.  Moreover, MAG testified to the identity of the

perpetrator—Fagaautau, her cousin who previously lived with her family.  Therefore, the trial

court did not abuse its discretion in finding that Fagaautau failed to explain the relevance of any

DNA evidence as to the identity of the perpetrator under RCW 10.73.170(2)(b).

Turning now to the substantive requirement, Fagaautau appears to argue that the trial

court erred by failing to apply the legal standard from *Crumpton*—that the trial court failed to

presume the results of the DNA testing would be favorable to him.  We disagree.

When reviewing whether the motion met RCW 10.73.170's substantive requirement,

courts must presume that results of DNA testing would be favorable to the movant.  *Crumpton*,

181 Wn.2d at 260.  When presumed favorable results would, in combination with the other

evidence, raise a reasonable probability the movant was not the perpetrator, courts must grant a

motion for DNA testing.  *Riofta* 166 Wn.2d at 367-38.  Thus, the decision to grant a motion for

post-conviction DNA testing rests on the probative value of presumed favorable results in light

of all the other evidence, rather than the sufficiency of the other evidence.  *Id.* at 366, 369;

*Crumpton*, 181 Wn.2d at 262; *see also State v. Gentry*, 183 Wn.2d 749, 766-67, 356 P.3d 174

(2015).

---

[5] Because Fagaautau does not challenge the trial court's findings of fact, we consider the
unchallenged findings as verities on appeal and do not review the trial court's decision for
factual error.  *See State v. Levy*, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006).

Courts have reversed orders denying motions under RCW 10.73.170 when presumed favorable results would exclude a defendant as the perpetrator. For instance, in *Crumpton*, the victim reported the rape shortly after the incident. 181 Wn.2d at 257. Crumpton requested testing of several items such as the victim's vaginal swabs, the sheet and handkerchiefs, and hairs collected from the scene of the crime. *Id.* Despite existing evidence strongly tying Crumpton to the crime, the Supreme Court held that the trial court abused its discretion in denying Crumpton's motion because presumed favorable results from the requested testing would exclude Crumpton and would be "extremely persuasive" of his innocence. *Id.* at 263-64.

In contrast, where presumed favorable results would not exclude a convicted individual as the perpetrator, courts have affirmed denial of motions for post-conviction DNA testing. For example, in *Riofta*, the defendant sought DNA testing of a white hat found at the shooting scene. 166 Wn.2d at 361. The victim testified that the perpetrator exited the car, while others remained inside, shot him, then fled, dropping the white hat. *Id.* at 362. The victim identified Riofta by name, whom he knew from the neighborhood, as the perpetrator. *Id.* at 363.

The car used in the shooting had been stolen the night before and the white hat belonged to the owner of the stolen car. *Id.* The court reasoned testing the hat could result in the absence of DNA or the presence of another person's DNA. *Id.* at 370. But because the hat belonged to the owner of the car until the day before the incident, the shooter wore the hat for a short time, other people could also have worn the hat, Riofta's head was shaved, the stolen car was found just blocks away from Riofta's home, the victim knew Riofta and had immediately identified him by name, and Riofta had a motive for the shooting, "[n]either the absence of Riofta's DNA nor the presence of another's DNA on the white hat would raise a reasonable probability of his

innocence." *Id.* at 370-73. The court affirmed the trial court's denial of Riofta's motion. *Id.* at 373.

Here, unlike in *Crumpton*, where the movant identified specific items of evidence and the evidence was collected promptly, Fagaautau identified no such evidence in his motion. And although the instant case involves a single perpetrator like in *Crumpton*, the delayed reporting here resulted in the absence of any preserved physical evidence. Thus, the trial court had no opportunity to presume favorable results of any DNA testing because there was nothing to test.

Even if Fagaautau were to identify new items for testing, presumed favorable results of any DNA testing would not demonstrate Fagaautau's innocence on a more probable than not basis in light of all the other evidence presented at trial. Two possible favorable results—the presence of another person's DNA or the absence of Fagaautau's DNA—would not exclude him as the perpetrator, as in *Riofta*. Other individuals could have come into contact with the new item several years after the crimes, and the absence of Fagaautau's DNA would not preclude his involvement in the crimes. *See id.* at 371. Furthermore, MAG gave testimony identifying Fagaautau as the perpetrator. Therefore, because presumed favorable results of any new item would not exclude Fagaautau from the crimes, his motion failed to raise a reasonable probability of his innocence in light of the other evidence. The trial court's conclusion that Fagaautau failed to satisfy the substantive requirement under RCW 10.73.170(3) was not untenable or unreasonable.

Accordingly, we hold that the trial court did not abuse its discretion in denying Fagaautau's motion on both procedural and substantive grounds.

No.  58347-0-II

CONCLUSION

We affirm the trial court's order denying Fagaautau's motion for post-conviction DNA testing under RCW 10.73.170.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Maxa, J.

Veljacic, A.C.J.

10